STATE v. EUGENE RASMUSSEN.[1]

February 26, 1954.

No. 36,106.

[1]Reported in 63 N. W. (2d) 1.

*William M. Sutor* and *Z. L. Begin,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Charles E. Houston,* Assistant Attorney General, and *Durward L. Pederson,* for respondent.

DELL, CHIEF JUSTICE.

This is an appeal from a judgment of conviction and from an order denying defendant's motion for a new trial.

Shortly before midnight on April 15, 1952, the defendant and one Willard Cook left Marshall in Cook's automobile on an all-night trip which ended the following noon at the defendant's home in Minneota. On this trip they stopped at Wilno, Tyler, Russell, Arco,

Ivanhoe, Hendricks, and Canby, Minnesota, and at Estelline and Clear Lake, South Dakota. In several of these villages buildings were admittedly burglarized by Cook, and it is the claim of the state that the defendant aided and abetted Cook in committing the burglaries.

Both defendant and Cook were charged with the crime of burglary in the third degree in breaking into and entering "Tony's Garage" in the village of Arco, where a rifle and flashlight were stolen. Cook pleaded guilty to the crime and was sentenced to the reformatory at St. Cloud. Defendant stood trial and was convicted, and it is from that conviction that this appeal was taken.

Both Cook and the defendant have criminal records, the defendant having been convicted of the crimes of grand larceny in the second degree and petit larceny in 1950 and Cook having been convicted of the crime of grand larceny in the first degree in 1949. Besides that Cook was court-martialed three times while in the navy, was convicted of desertion in time of war, and received a bad conduct discharge from the navy.

Cook was a witness for the state in the trial of the defendant. The trial court correctly held that Cook was an accomplice as a matter of law.[2] The evidence leaves no doubt that a crime was committed; this is so obvious that discussion is unnecessary. The question for us is whether there is legal evidence that defendant was a party to the crime.

■ Defendant contends that his conviction rests solely upon the testimony of Cook, the accomplice, and must, therefore, be set aside. M. S. A. 634.04 provides:

"A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

The reason for requiring the testimony of an accomplice to be corroborated is that it is the testimony of one admittedly corrupt

---

[2]State v. Elsberg, 209 Minn. 167, 295 N. W. 913.

and there is likelihood that it may have been given in the hope that by turning state's evidence he may receive clemency.[3] There must be corroborating evidence to support the testimony of the accomplice to aid in establishing his credibility. The rule is satisfied if the corroborative evidence in some substantial degree tends to affirm the truth of his testimony and to point to the guilt of the defendant.[4] It need not be sufficiently weighty that standing alone it would make out a prima facie case[5] or sustain a conviction.[6] The corroboration may come from the testimony of the defendant himself.[7] Circumstantial evidence may be sufficient to corroborate the testimony of an accomplice.[8] The entire conduct of the accused may be looked to for corroborating circumstances, and if from those circumstances the connection of the accused with the crime may fairly be inferred, the corroboration is sufficient. Thus, for example, sufficient corroboration may be furnished by the conduct of the accused, such as being present at the scene of the crime or in the company of the accomplice, when such conduct is coupled with suspicious circumstances such as unseasonableness of the hour, inclemency of the weather, lack of apparent reason for his presence, or subsequent denial of his presence.[9]

There was evidence before the jury here tending to corroborate the testimony of the accomplice Cook in the following respects: The defendant admitted that he was at the scene of the crime with

[3]State v. Smith, 144 Minn. 348, 175 N. W. 689; State v. Jackson, 198 Minn. 111, 268 N. W. 924; State v. Scott, 203 Minn. 56, 279 N. W. 832.

[4]State v. Briggs, 122 Minn. 493, 142 N. W. 823; State v. Christianson, 131 Minn. 276, 154 N. W. 1095; State v. Elsberg, 209 Minn. 167, 295 N. W. 913.

[5]State v. Whitman, 103 Minn. 92, 114 N. W. 363.

[6]State v. Christianson, 131 Minn. 276, 154 N. W. 1095; State v. Clements, 82 Minn. 434, 85 N. W. 229; State v. Lawlor, 28 Minn. 216, 9 N. W. 698; State v. Jackson, 198 Minn. 111, 268 N. W. 924.

[7]State v. Lemke, 207 Minn. 35, 290 N. W. 307; 22 C. J. S., Criminal Law, § 812.

[8]State v. Workman, 157 Minn. 168, 195 N. W. 776; State v. Demopoulos, 169 Minn. 205, 210 N. W. 883; 5 Dunnell, Dig. (3 ed.) § 2457.

[9]22 C. J. S., Criminal Law, § 812, p. 1405.

Cook when the crime was committed, and it appears that the hour was unseasonable and the circumstances exceedingly suspicious. It appears that the defendant was more familiar with some of the places burglarized than Cook and that Cook was unacquainted with the lumberyard at Hendricks which was burglarized whereas the defendant and his family traded there and the defendant was well acquainted with the layout of the building. While defendant claimed that he remained with Cook at the time of the commission of the crime for which he was convicted and during the other burglaries because of duress and threats made by Cook, it appears that defendant had ample opportunity to escape and leave Cook on several occasions. Furthermore, defendant's claim of duress is strongly refuted by the fair inferences to be drawn from his own testimony showing his conduct throughout the trip, lasting from midnight until the following noon, and also by the other circumstances in the case. While defendant claimed that he was compelled to remain with Cook during the commission of the crime in question and during the other burglaries because of duress, he made no effort after separating from Cook, although several days intervened before his arrest, to report the crime or other burglaries to the authorities. Moreover, when first apprehended by the sheriff, he denied that he was with Cook when the crime under consideration here and the other burglaries were committed and claimed that he knew nothing about them at all. Later he changed his position and admitted to the sheriff that he was with Cook at the time of the commission of the crime and the other burglaries and then for the first time claimed that he was forced to accompany Cook on his criminal escapade because he was threatened by Cook with a gun at Wilno. Furthermore, defendant knew where the stolen property was hidden and, after his arrest, took the sheriff to the place and turned the property over to him. Defendant's testimony was also contradicted in several other respects on material points by disinterested witnesses.

We need not further particularize on the evidence. We have not attempted to set forth all of its damaging features. Our examination of the record reveals an abundance of evidence tending to strongly corroborate the testimony of Cook and tending to convict

the defendant of the crime. Where evidence of corroboration appears its weight and credibility is for the jury.[10] Considering the evidence as a whole, including the testimony of Cook, as the jury had a right to do, it clearly appears that the jury was amply justified in finding the defendant guilty. According to the testimony of Cook, defendant and Cook planned the burglaries and equally participated in them. Aside from the testimony of Cook the evidence strongly indicates the defendant's guilt. It is not surprising that upon the record before us defendant was convicted.

■ While cross-examining Cook, counsel for defendant devoted a great deal of time to interrogating him about the amount of intoxicating liquor which he had consumed, not only on April 15 but also on the previous day. Finally the court intervened stating, in substance, that it should be made to clearly appear that, if the court was going to permit any further testimony as to the amount of intoxicating liquor consumed by Cook, the record should show whether it was the intention of counsel to imply that the liquor had impaired Cook to such an extent that he didn't know what he was doing. Thereupon counsel for defendant noted an exception to the remarks of the court and stated his reasons for the inquiry. The court then stated: "Well, you may go ahead although I do not think you should spend too much time on this liquor." Thereafter there was further extensive cross-examination of Cook as to the amount of intoxicating liquor consumed by him. The claim is now made that the remarks of the court minimized the effect of the evidence of Cook's use of intoxicating liquor and were prejudicial to the defendant. An examination of the record, however, satisfies us that the matter of intoxicating liquor was thoroughly explored and that the defendant was in no way prejudiced. Nor did the court commit error in the remarks which it made under the circumstances.

■ Defendant, when testifying in his own defense, explained his presence with Cook at the scene of the crime by claiming that any acts participated in by him were under compulsion and that he was

[10]State v. Smith, 144 Minn. 348, 175 N. W. 689; State v. Dallas, 145 Minn. 92, 176 N. W. 491; 22 C. J. S., Criminal Law, § 813.

involuntarily there because Cook pointed a gun at him and told him he "had to stay until he finished." The court submitted the defense of duress to the jury under § 610.07. Defendant claims that the instructions of the court on that issue made it appear to the jury that duress was defendant's sole defense leaving a permissive and probable implication that the defendant did aid and abet Cook in the commission of the crime. Duress was clearly an issue of the trial upon which the court was required to instruct for, if the jury concluded that the defendant did aid and abet in the commission of the crime but that it was only because he was acting under duress within the meaning of the statute, the defendant was then entitled to an acquittal. The court's instructions to the jury must be examined and construed as a whole.[11] An examination of the charge as a whole discloses that all issues, including that of duress, were fairly and properly submitted to the jury.

■ Defendant contends that it was error for the court to instruct the jury that it could consider prior convictions of the defendant as affecting his credibility without stating that the same rule applied to Cook. No such instruction was requested by the defendant, and at the conclusion of the charge the matter was not called to the attention of the court nor was any objection made to the instruction given. The rule is well settled that the failure to give a specific instruction in the absence of a request is not reversible error, and this is particularly true where the instruction is of a cautionary nature.[12] Clearly the instruction given by the court was right. If defendant desired a similar instruction as to Cook, he should have made a request to that effect; having failed to do so, defendant is in no position to complain.

[11]State v. Murphy, 181 Minn. 303, 232 N. W. 335, 71 A. L. R. 66; State v. Waltz, 237 Minn. 409, 54 N. W. (2d) 791; Blumenthal v. United States (8 Cir.) 88 F. (2d) 522.

[12]State v. Finley, 214 Minn. 228, 8 N. W. (2d) 217; State v. Soltau, 212 Minn. 20, 2 N. W. (2d) 155; State v. Lemke, 207 Minn. 35, 290 N. W. 307; State v. Eidsvold, 172 Minn. 208, 215 N. W. 206; 5 Dunnell, Dig. (3 ed.) §§ 2479, 2479a.

At the completion of the charge defendant requested that the jury be instructed that, if the defendant innocently and through stupidity accompanied Cook on the trip but did not aid, abet, or assist in breaking into the garage at Arco, they could find him not guilty even though they did not believe that he was acting under duress. This request the court denied. From the record it is plain that the case was not tried on any such theory nor is the evidence sufficient to justify such an instruction. It was defendant's claim throughout the trial that, although he accompanied Cook willingly at the beginning of the trip, he was present at the time of the commission of the crime because he was acting under duress. The court correctly refused to give the instruction.

Other alleged errors assigned by the defendant require no discussion. They have been carefully examined and considered and are found to be without merit.

Affirmed.

