STATE of North Dakota, Plaintiff
and Appellee,

v.

Darryl THORSON, Defendant
and Appellant.

Cr. No. 619.

Supreme Court of North Dakota.

March 2, 1978.

**442**

Leo Broden, Devils Lake, for defendant and appellant.

Keith C. Magnusson, Asst. State's Atty., Lakota, for plaintiff and appellee.

ERICKSTAD, Chief Justice.

Darryl Thorson appeals from a Nelson County District Court judgment of conviction based on a verdict of a jury which found him guilty of criminal mischief, a class C felony.

The facts relative to this appeal are not in dispute. On the morning of July 29, 1976, a tractor belonging to Connley Anderson was found in the Sheyenne River about three miles north of his farm. A cultivator, a harrow, and a pony drill were attached to the tractor. The tractor had been parked in the Anderson farmyard the night before and was moved sometime during the night. The route the tractor had been driven was apparent from the damaged crops, fences, and trees.

A criminal information was issued on December 7, 1976, charging Thorson with the crime of criminal mischief in violation of Section 12.1–21–05, N.D.C.C. A jury trial was held on June 21, 22, and 23, 1977. At the trial there was considerable evidence concerning the damage to the tractor, the attached implements, fences, and crops. There was, however, only one witness, Bob Brotten, whose testimony linked Thorson to the incident. Brotten testified as to what occurred that night and, if believed, his testimony clearly implicated Thorson with the commission of the crime. At the conclusion of the trial, the jury found Thorson guilty of criminal mischief, and found that the damages exceeded $5,000 thus making the offense a class C felony.

In this appeal, Thorson contends that under the laws of North Dakota there was insufficient competent evidence upon which to base his conviction. This contention is based on two premises. The first premise is that the trial court erred in not instructing the jury that Brotten, as a matter of law, was an accomplice. The second premise is that Brotten's testimony, as an accomplice, was not sufficiently corroborated as required by Section 29–21–14, N.D.C.C.

▆ The first issue we must decide is whether the determination that a witness is an accomplice is a question of fact or law. We think the proper rule is that if the facts as to the witness' culpability are disputed or susceptible of different inferences, then it is a question of fact for the jury. If, on the other hand, the facts as to the witness' culpability are neither disputed nor susceptible of different inferences, then it is a question of law for the court. *Tucker v. State*, 245 N.W.2d 199 (Minn.1976); *State v. Sallis*, 238 N.W.2d 799 (Iowa 1976); *State v. Johnson*, 81 S.D. 600, 139 N.W.2d 232 (1965).

This court, in the past, has stated that whether or not a person is an accomplice is a question of fact. *State v. Powell*, 73 N.W.2d 777 (N.D.1955); *State v. Kellar*, 8 N.D. 563, 80 N.W. 476 (1899). In both those cases, however, the facts were disputed and susceptible of different inferences. In *State v. McCarty*, 47 N.D. 523, 182 N.W. 754

(1921), this court stated that an instruction that a witness was an accomplice could only be given where there is no dispute in the evidence. Thus, our past statements on this question are consistent with the rule stated above which we now expressly adopt.

To apply this test to this case, it is necessary to look at the evidence concerning Brotten's involvement in the incident. Brotten testified that Thorson, Mark Ensrud, and he were driving around the night of the 28th and the morning of the 29th of July, 1976, in Thorson's automobile. He stated that they had had a lot to drink and that they were "planning to get some farm machinery". He said he could not remember whose idea it was to get the farm machinery, but that it was just "an agreement between us".

According to Brotten, the three of them stopped at the Anderson farm where Thorson drove the tractor out of the yard and into a field. Thorson then jumped off the tractor and the tractor kept going in circles. Mark Ensrud then got on the tractor and drove it north for a mile or more. Ensrud stopped the tractor and Thorson got back on the tractor and drove it north again. Thorson drove the tractor toward the river and down a hill leading to the river. Shortly thereafter, Thorson came running back to the car, and, from a nearby bridge, Brotten saw the tractor in the river.

Brotten testified that he did not drive the tractor himself, but followed along in Thorson's car. He also stated that he did not drive the car. He did testify, however, that he got out of the car at the Anderson farm with a .22 rifle when they first took the tractor. He said there was a dog by the tractor at that time and it was possible that he intended to shoot the dog. He did not fire a shot, and otherwise testified that he did not know if he intended to shoot the rifle.

Brotten further testified that he knew Thorson was going to take the tractor at the Anderson farm and that he did not object. He said that at the time they initially decided to get some farm equipment, he fully intended to participate in the driving. He later testified, though, that he could not remember if he still planned to drive the tractor after they had taken it.

This testimony of Brotten concerning his involvement in the incident is not disputed. Thorson contends that as a result of this undisputed evidence, the trial court was required as a matter of law to find that Brotten was an accomplice, and to so instruct the jury. In support of this contention, Thorson relies on State v. Anderson, 172 N.W.2d 597 (N.D.1969), and State v. Helmenstein, 163 N.W.2d 85 (N.D.1968), where we stated:

> " 'Where circumstances show a common plan of several persons to do an unlawful act, to which all assent, whatever is done in furtherance of the original design is the act of all. Each one need not take an active part in the commission of the crime to make him guilty of it.' State v. Helmenstein, 163 N.W.2d 85 (N.D.1968)." State v. Anderson, supra, 172 N.W.2d at 600.

In Helmenstein, a group of young people planned a burglary of a grocery store. The group drove to Hannover, and parked the car some distance from the store. Three of the party broke into the store and stole some merchandise. Afterward, they returned to the car, and the whole group agreed on what story to tell if they were questioned later. They also divided the loot. At the trial of one of the alleged participants, the other five members of the group testified for the State. There was no other evidence offered connecting the defendant with the crime. The trial court found that one of the State's witnesses was not an accomplice because he did not take an active part in the burglary and in fact was actually asleep during the time of the burglary. On the basis of that witness' testimony, the court found the defendant guilty.

On appeal we reversed the district court after holding that all five of the other members of the group were accomplices. In that case, we concluded that all three people who remained in the car were accomplices, even though they did not take an

active part in the burglary, and even though they had objections to the burglary which they did not express.

*State v. Anderson, supra,* also involved a burglary. Four persons who agreed to burglarize a building, parked the car in which they were riding about one and one-half blocks away from the building. One of the group stayed in the car while the others went to the building. A police car arrived at the scene of the attempted burglary and two of the persons ran away. The other person was apprehended. At the trial of one of the members of the group, the person who stayed in the car was the State's witness. When the conviction was appealed to this court, we stated that the person who remained in the car was clearly an accomplice and that his testimony, therefore, had to be corroborated.

█ We disagree with Thorson's contention that under the facts of this case the holdings of *Anderson* and *Helmenstein* required the trial court to find that Brotten, as a matter of law, was an accomplice. In both *Anderson* and *Helmenstein*, it was clear that there were common plans to commit burglary. The facts were undisputed and not susceptible of different inferences. In this case, however, while the facts concerning the agreement are undisputed, they are susceptible of different inferences.

The only evidence concerning what was agreed to in this case was Brotten's statement that they were "planning to get some farm machinery". This ambiguous statement is susceptible of different inferences. It cannot be concluded that the only inference that could arise from that statement was that there was a common plan to commit "criminal mischief"[1] or some other crime.

Having determined that the evidence of whether or not there was a common plan to commit "criminal mischief" in this case is susceptible of different inferences, it cannot be said that the trial court erred in not

finding, as a matter of law, that Brotten was an accomplice. It is undisputed that Brotten was at the scene of the crime, but as recently as 1977, we have stated that "mere presence at the scene of the crime is not enough to make one an accomplice." *Zander v. S. J. K.,* 256 N.W.2d 713 (N.D. 1977). Whether or not there was a common plan to commit "criminal mischief", or whether or not Brotten took an active enough part in the commission of the offense so as to be found to be an accomplice, were questions of fact properly left for the jury in this case.

█ Thorson also claims that the trial court improperly instructed the jury by giving an instruction defining accomplice which did not contain part (c) of Section 12.1–03–01(1), N.D.C.C. Part (c) of Section 12.1–03–01(1), N.D.C.C., was added after North Dakota Jury Instruction No. 1300 (which the trial court gave in this case) was drafted. The trial court did, however, give the new law in a following instruction.

In determining whether or not the jury was mislead by the instructions, we have stated that "[i]nstructions must be considered as a whole, and if when so considered, they correctly advise the jury as to the law, it is sufficient, although a portion thereof standing alone may be insufficient or erroneous." *State v. Williams,* 150 N.W.2d 844 (N.D.1967), Syl. ¶ 3. In this case, the instructions, taken as a whole, properly instructed the jury as to the definition of an accomplice.

Thorson next contends that there was insufficient evidence to corroborate the testimony of Brotten as required by Section 29–21–14, N.D.C.C. That section reads:

"A conviction cannot be had upon the testimony of an accomplice unless he is corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely

---

1. "1. A person is guilty of an offense if he:
   a. Willfully tampers with tangible property of another so as to endanger person or property; or

b. Willfully damages tangible property of another." Section 12.1–21–05(1), N.D.C.C.

shows the commission of the offense, or the circumstances thereof."

Of course that section would only apply if the jury had found that Brotten was an accomplice. We at this time cannot determine whether the jury found Brotten not to be an accomplice, or whether they found him to be an accomplice but sufficiently corroborated. If they found Brotten to be an accomplice, the question of whether or not there was sufficient corroboration is of the utmost importance in that a conviction could not be based on the uncorroborated testimony of an accomplice.

As we cannot assume that the jury found Brotten not to be an accomplice, we must determine the question of the sufficiency of the corroboration. Before we review the evidence to determine the sufficiency, we must decide whether such a determination is a question of fact or law. In *State v. Anderson*, 172 N.W.2d 597 (N.D.1969), we said:

"The weight of the corroborating evidence is for the jury. It is only when there is no corroborating evidence of the nature required that this court may reverse a judgment based upon the verdict of guilty." 172 N.W.2d at 600.

The Iowa Supreme Court has also dealt with this same issue and stated: "Whether there is corroborative evidence is a question of law; its sufficiency is for the jury." *State v. Willman*, 244 N.W.2d 314, 315 (Iowa 1976).

It is therefore incumbent upon a trial court in this state to first determine, as a matter of law, whether or not there is any corroborating evidence of the nature required by Section 29–21–14, N.D.C.C. Only after the court has found such corroborative evidence is it allowed to leave the question of the sufficiency of the corroborative evidence to the jury.

This court has previously discussed the kind of corroborating evidence required by Section 29–21–14, N.D.C.C. In *State v. Anderson, supra*, we stated:

"This court has held that testimony of an accomplice does not warrant a convic-

tion unless it is corroborated by other evidence to connect the defendant with the offense. *State v. Todd*, 62 N.D. 479, 244 N.W. 25 (1932). However, every material fact testified to by an accomplice need not be corroborated. It need not be sufficient, in itself, to warrant a conviction or establish a prima facie case. All that is required is that the evidence corroborates the accomplice as to some material fact, or facts, and tends to connect the defendant with the commission of the offense. *State v. Foster*, 69 N.D. 428, 287 N.W. 517 (1939); *State v. Pusch*, 77 N.D. 860, 46 N.W.2d 508 (1950). Corroboration may be furnished by facts and circumstances which tend to connect the defendant with the commission of the crime. *State v. Foster, supra; State v. Marmon*, 154 N.W.2d 55 (N.D.1967)." 172 N.W.2d at 600.

In *State v. Coudotte*, 7 N.D. 109, 72 N.W. 913 (1897), this court, in discussing the same statute as we have today on the corroboration of accomplice testimony, stated in syllabus ¶ 2:

"2. Testimony that tends to connect the defendant with the commission of the offense charged only when supplemented by certain testimony of the accomplice is not such corroborating testimony as the statute requires."

In this case, the State points to three things which it claims corroborates the testimony of Brotten. The first of these is the testimony of David Reisinger. In his testimony, Reisinger stated that he was with Thorson, Brotten, and Mark Ensrud at about 12:30 a. m. on July 29, 1976. He testified that Thorson, Brotten, and Ensrud drove around Tolna, North Dakota with him in his car from around 12:30 to 1:00 a. m. (It should be noted that the Anderson farm is about six and one-half miles from Tolna.) At that time, according to Reisinger, Thorson and Brotten got out of the car, but Ensrud continued to ride with him for another ten minutes.

The second piece of evidence which the State claims corroborates the testimony of Brotten, is part of the testimony of Brian

Messner. Messner testified that the night after the tractor was found in the river, he talked to Thorson. According to Messner's testimony, Thorson told him that he had had a rough night and that he had been with Brotten and Ensrud most of the night. Messner also testified that Thorson did not say anything further about what they had done that night.

This testimony of Reisinger and Messner thus does support Brotten's testimony that he was with Thorson and Ensrud the night of the incident. It also places Thorson at Tolna (which is only about six and one-half miles from the Anderson farm) at about 1:00 a. m. of the night of the crime. In *State v. Anderson, supra,* we stated:

"Other jurisdictions have found that, under certain circumstances, evidence that the defendant was in the company of accomplices or present at or near the place of the crime shortly before or after the crime was committed, may be sufficient corroboration that tends to connect the defendant with the commission of the crime. *State v. Rasmussen,* 241 Minn. 310, 63 N.W.2d 1; *State v. Stave,* 280 Minn. 269, 158 N.W.2d 848; *People v. Brown,* 30 A.D.2d 279, 291 N.Y.S.2d 573; *Bird v. State* (Tex.Cr.App.), 423 S.W.2d 919." 172 N.W.2d at 601.

In Minnesota, the rule is stated in *State v. Rasmussen,* 241 Minn. 310, 63 N.W.2d 1 (1954), to be:

". . . sufficient corroboration may be furnished by the conduct of the accused, such as being present at the scene of the crime or in the company of the accomplice, when such conduct is coupled with suspicious circumstances such as unseasonableness of the hour, inclemency of the weather, lack of apparent reason for his presence, or subsequent denial of his presence." 241 Minn. at 313, 63 N.W.2d at 3–4.

In *Bird v. State,* 423 S.W.2d 919 (Tex.Cr. App.1967), also cited in *Anderson,* the Court of Criminal Appeals of Texas, stated:

"The rule which we deem applicable is found in *Cawley v. State,* 166 Tex.Cr.R. 37, 310 S.W.2d 340:

'Proof that accused was at or near the scene of the crime at or about the time of its commission is admissible in corroboration of the testimony of the accomplice, and may tend to connect the accused with the commission of the crime, so as to furnish sufficient corroboration to support a conviction when coupled with suspicious circumstances, such as * * * being in the company of the accomplice, * * * subsequent flight * * *.'" 423 S.W.2d at 922.

The last piece of evidence the State relies on to corroborate the testimony of Brotten is the fact that a Camel filter cigarette was found in the tractor cab when it was in the river. Sheriff Arthur Varty testified that he found the Camel filter cigarette lying on the floor board of the tractor when he was investigating the incident. Brian Messner, who worked for Connley Anderson, also testified that this cigarette was found on the tractor. Messner further testified that he had cleaned the tractor the night of July 28. Both Messner and Connley Anderson, who also saw the tractor cab after it had been cleaned, testified that they did not see a cigarette in the tractor cab the night before it was taken. There was also testimony that neither Anderson nor Messner smoked Camel filter cigarettes and that they were the only ones who used that tractor. Finally, there was testimony that Thorson did smoke that brand of cigarette.

■ The evidence concerning the cigarette is circumstantial and slight, but, if it tends to connect Thorson with the commission of the crime, it is sufficient to send the issue of corroboration to the jury. The corroborative evidence, as we stated in *Anderson,* need not be sufficient to warrant a conviction or establish a prima facie case.

■ The trial court, in this case, submitted the issue of the sufficiency of the corroborative evidence to the jury. It found, therefore, that when considering all the evidence together, there was some evidence of the nature required by Section 29–21–14, N.D.C.C. This was a judgment

call by the trial court and we will not find error in his submitting the question of the sufficiency of the corroboration to the jury in this case. We think it well to consider what we have said in the past:

". . . the state is not called upon to point to some single or isolated fact which, in itself, unrelated to other proven facts, will be sufficient corroboration. It is the combined and cumulative weight of the evidence, furnished by non-accomplice witnesses, which supplies the test." *State v. Anderson, supra,* 172 N.W.2d at 601.

▇ The jury, in this case, therefore, properly had before it the question of whether or not Brotten was an accomplice and, if it found he was, whether there was sufficient corroboration of his testimony. We will not substitute our opinion as to whether or not Brotten was an accomplice and, if so, whether or not there was sufficient corroboration of his testimony. These questions of fact were properly before the jury, and there is sufficient evidence to sustain the jury verdict of guilty of criminal‑ mischief. *See State v. Carroll,* 123 N.W.2d 659 (N.D.1963).

The next issue raised by Thorson is that the evidence was insufficient to prove damages beyond an amount of $5,000. This is important because, under Section 12.1–21–05, N.D.C.C., the degree of the offense depends on the amount of damages. At the time of Thorson's trial, Section 12.1–21–05(2), N.D.C.C.,[2] read:

▇ Thorson is correct in stating that the normal rule of proof beyond a reasona-

ble doubt in criminal cases applies to the finding of damages in this case. *See Bere v. State,* 76 Wis.2d 514, 251 N.W.2d 814, 819 (1977). We disagree with Thorson, though, and find that there was evidence sufficient to prove beyond ‘a reasonable doubt that Thorson caused damage in excess of $5,000.

The jury, after considering the evidence, found the damages to be $5,315. We have stated in the past that:

"In criminal cases we have repeatedly held that 'at the appellate level we do not substitute our judgment for that of the jury or trial court where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction.' *State v. Kaloustian,* 212 N.W.2d 843, 845 (N.D. 1973), and cases cited therein; *State v. Neset,* 216 N.W.2d 285, 287 (N.D.1974)." *State v. Olmstead,* 246 N.W.2d 888, 890 (N.D.1976).

We, then, will not substitute our judgment in this case for that of the jury on the issue of damages.

▇ In connection with the issue of damages, Thorson also contends that the court improperly instructed the jury on the issue of damages to growing crops. The court instructed the jury on this issue twice, using similar language. Its instructions were basically that the measure of damages is the probable ultimate value of the planted but unmatured crop in comparison with the actual matured value of other crops of a like kind, cultivated during the same period, in the same vicinity and under substantially similar conditions. The correct rule was recently stated by our court as follows:

---

**2.** Section 12.1–21–05(2), as amended in 1977, reads:

> "2. The offense is:
> a. A class C felony if the actor intentionally causes pecuniary loss in excess of two thousand dollars or damages tangible property of another by means of an explosive or a destructive device.
> b. A class A misdemeanor if the actor recklessly causes pecuniary loss in excess of two thousand dollars or if the actor intentionally causes pecuniary loss of from one hundred through two thousand dollars.
> Otherwise the offense is a class B misdemeanor."

> "2. The offense is:
> a. A class C felony if the actor intentionally causes pecuniary loss in excess of five thousand dollars or damages tangible property of another by means of an explosive or a destructive device.
> b. A class A misdemeanor if the actor recklessly causes pecuniary loss in excess of five thousand dollars or if the actor intentionally causes pecuniary loss in excess of five hundred dollars.
> Otherwise the offense is a class B misdemeanor."

" . . . the measure of damages for injury to or partial destruction of a growing crop is the difference between the value of the crop immediately before and its value immediately after the injury or partial destruction. The most generally approved method of ascertaining damages for such crop injuries is to take the value at maturity which the probable crop would have had but for the injury, deduct the value which the injured crop actually had at maturity, and deduct further any reduction in amount and value of labor and expense attributable to the reduced yield." *Eichenberger v. Wilhelm*, 244 N.W.2d 691, 697 (N.D.1976). We have not had occasion to decide if the civil net damage rule applies as stated above to cases of this kind or if the gross damage concept applies in determining if the damages are in excess of $5,000. In this case it is not necessary to make this determination because, under the circumstances of this case, where swaths were taken indiscriminately and it would have been almost impossible to ascertain the expenses that were saved, if any, by not harvesting the swaths damaged, we think that these instructions were not erroneous.

The last issue raised by Thorson was that the trial court allowed testimony calculated to elicit sympathy from the jury. This testimony was to the effect that Anderson did not repair all of his damaged machinery because of his financial inability to do so. We do not find that this testimony was calculated to elicit sympathy, but that it was necessary to explain why the actual costs of repairs were less than the damage estimates. We thus find no error in admitting this testimony.

We therefore affirm the judgment of the trial court.

VOGEL, PEDERSON, PAULSON and SAND, JJ., concur.