**STATE of North Dakota, Plaintiff and Appellee,**

.v.

**Ronald Scott THOMPSON, Defendant and Appellant.**

**Crim. Nos. 982, 1029.**

Supreme Court of North Dakota.

Jan. 3, 1985.

the North Dakota Rules of Appellate Procedure. This clearly was not a frivolous appeal.

Richard L. Schnell, State's Atty., Mandan, for plaintiff and appellee; argued by Richard L. Schnell.

Bickle, Coles & Snyder, Bismarck, for defendant and appellant; argued by James J. Coles, Bismarck.

ERICKSTAD, Chief Justice.

This case involves two separate appeals by the defendant, Ronald S. Thompson, the first from a judgment of conviction entered by the district court pursuant to a jury verdict finding him guilty on two counts of burglary, and the second from an order of the district court denying his motion for a new trial on the ground of newly discovered evidence. We affirm both the judgment of conviction and the order denying a new trial.

Thompson was charged in a criminal complaint with committing two counts of burglary on or about June 9, 1983, in that he did willfully enter rooms 133 and 205 of the Seven Seas Motor Inn [hereinafter referred to as the "Seven Seas"] in Mandan—rooms which at the time were rented to other persons—when he was not licensed, invited, or otherwise privileged to do so.

During the early afternoon of June 9, 1983, Barry Davis, the owner and operator of the Seven Seas, observed Thompson and three other young persons, David Kershner, Robyn Walotsky and her brother, Michael, approach the motel's registration

desk and ask the desk clerk for employment applications. According to Davis, Thompson "kind of stuck out" as he was dressed in fairly heavy military or camouflage-type clothing which, at the time, was thought by Davis to be unusual dress for warm weather and for one in quest of employment. Davis later observed, without concern, Thompson and another young man walking through a ground floor hallway in the motel room area of the Seven Seas, and thereafter observed Thompson and the other job applicants leaving the parking lot of the Seven Seas in a vehicle driven by David Kershner. Kershner testified that he drove Thompson and Michael Walotsky back to the Seven Seas, at approximately 5:30 or 6:00 p.m., because the pair wanted to eat dinner at the restaurant located there.

Davis testified that he was walking down a stairway in the motel room area of the Seven Seas at about 9:00 p.m., when he saw a man he recognized as Thompson, dressed in camouflage clothing with "gloves on him," and another man, standing together "kind of leaning against the wall" in the second floor hallway. The men did not notice Davis who had stepped back into the stairway to observe what was going on. Davis testified that he then realized that Thompson and the other person were watching another man who was walking away from them to the far end of the hallway. As soon as this man turned into his room, the two started walking in the same direction that the man had gone. Davis testified:

"As soon as [the man] ... disappeared, they started to move. At that time I asked them if I could be of any assistance, and I don't believe they had seen me until that time. They seemed kind of surprised. And they ... continued walking away from me, and I asked them again could I be of any assistance or what they were doing, and received no reply, and I finally asked them were they registered in the motel. And the defendant turned over his shoulder and says, yeah, we are in room 111, which I knew

was not accurate because I knew the person that was in 111."

Davis testified that the two then increased their pace, not running but "awfully close to it," in proceeding to the end of the hallway and down a stairway. Davis observed the men outside the motel "running toward Interstate 94," which is adjacent to the Seven Seas.

The police were called after a guest of the Seven Seas reported that someone had entered his room. The occupant of room 205 testified that a suitcase in his room had been "messed up" and that a package of Winston brand cigarettes, purchased in Minnesota, was taken. The occupant of room 133 testified that just about everything in his room had been disturbed, but nothing was missing. Thompson and Walotsky were apprehended by the police alongside Interstate 94 near the Seven Seas. A package of Winston cigarettes bearing a Minnesota stamp was found in Thompson's possession.

Davis later discovered that an emergency master key, capable of opening the door of any of the motel's sleeping rooms, and a maid's key were missing from the Seven Seas.

Thompson raises the following issues for our consideration: (1) "Was the defendant denied his Sixth Amendment right to effective counsel?" (2) "Was there sufficient evidence for the jury to find the defendant guilty of the charges alleged beyond a reasonable doubt?" (3) "Did the court err in denying the defendant's motion for a new trial based upon the discovery of new evidence?"

### I.

Thompson contends that he was denied his Sixth Amendment right to effective assistance of counsel as applied to state courts through the Fourteenth Amendment of the United States Constitution.

Counsel was appointed for Thompson by the court. This attorney represented Thompson at his preliminary hearing and for a time thereafter; however, for reasons not explained by the record, a different attorney represented Thompson for a time prior to and during the trial held December

8–9, 1983. Immediately prior to trial the court denied Thompson's request that yet another attorney be appointed to represent him. Thompson's trial attorney later filed a motion to withdraw as counsel upon being made aware that Thompson desired to appeal his conviction on the ground of ineffective assistance of counsel. The motion was granted. A different attorney was retained who on behalf of Thompson filed, pursuant to Rule 33, N.D.R.Crim.P., a motion for a new trial on the ground of newly discovered evidence. This motion was denied. The attorney on these appeals is not the same attorney who represented Thompson at trial.

In our recent decision in *State v. Patten*, 353 N.W.2d 30, 33 (N.D.1984), we briefly reviewed the United States Supreme Court's decision in *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which articulated the proper standards for judging a criminal defendant's claim of actual ineffective assistance of counsel under the Sixth Amendment. In *Strickland*, the Court held that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* 104 S.Ct. at 2064. The Court established a two-part test for determining whether counsel's assistance was so defective as to require reversal of a conviction:

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

*Strickland* directs that in examining the first element—whether counsel's performance was deficient—"[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* 104 S.Ct. at 2065. The proper measure of attorney performance is "simply reasonableness under prevailing professional norms," considering all the circumstances from the defense counsel's perspective at the time. *Id.* However, because it is all too easy to second-guess an unsuccessful counsel's defense through the distorting effects of hindsight, in making that inquiry "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* 104 S.Ct. at 2065–66 [citation omitted].

In examining the second element—whether the deficient performance was prejudicial—we must inquire, considering the totality of the evidence before the judge or jury, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* 104 S.Ct. at 2069. It is the defendant's burden to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* 104 S.Ct. at 2068.

The principles outlined by the majority opinion in *Strickland* do not establish mechanical rules. *Id.* 104 S.Ct. at 2069. "Although those principles should guide the process of decision, the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* The Supreme Court also suggested that a court need not address both the performance and prejudice components of the inquiry if the defendant makes an insufficient showing on one. *Id.* 104 S.Ct. at 2069–70.

After examining carefully the record in light of the standards articulated in *Strickland*, we conclude that Thompson has

failed to show that the performance of his trial attorney was deficient.

■ A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Strickland*, 104 S.Ct. at 2066. Thompson has listed for this Court several instances of alleged deficient conduct on the part of his trial attorney, the cumulative effect of which he argues resulted in a denial of his right to effective counsel:

1. Counsel did not spend sufficient time discussing the case with the defendant and tended to ignore his suggestions and questions. Counsel did not discuss or mention the possibility of using an insanity defense at trial.

2. Counsel did not carry out a sufficient investigation regarding the case and did not make a sufficient attempt to locate and interview witnesses allegedly named by the defendant.

3. Counsel did not request a trial continuance for the purpose of allowing a witness, Thomas Fredericks, to testify at trial.

4. Counsel did not adequately cross-examine the State's witnesses.

5. Counsel did not bring out defendant's prior criminal offenses on direct-examination, but rather allowed this information to be elicited by the State's attorney on cross-examination.

■ Several of the deficiencies alleged are nothing more than examples of second-guessing on the part of new counsel on matters of trial strategy, and others are but mere assertions with no factual basis in the record. The only alleged deficiency at least marginally discussed in Thompson's brief is his trial attorney's alleged failure to investigate the scene of the crime and adequately cross-examine Mr. Davis for the purpose of ascertaining the circumstances surrounding the loss of the motel keys. Thompson argues that "a close examination by trial counsel may have disclosed that it would have been impossible for the defendant to have gotten possession of [the emergency master] ... key."

The record reveals that an emergency master key was left by Davis in a desk drawer, was discovered missing, and was later found buried alongside Interstate 94 near the Seven Seas. There is nothing in the record to suggest that it was impossible for Thompson or Walotsky to obtain the key nor were any affidavits filed to support such a claim. Thompson has also failed in his burden of showing that his trial attorney failed to investigate the scene of the crime.

Having concluded that Thompson has failed to show that his counsel's performance was deficient, we hold that there was no denial of his Sixth Amendment right to effective counsel.

## II.

■ Thompson's trial attorney moved for a judgment of acquittal at the close of the State's case which the trial court denied. Thompson contends there was not sufficient evidence presented by the State from which the jury could find him guilty beyond a reasonable doubt.

In *State v. Voeller*, 356 N.W.2d 115, 117 (N.D.1984), we said:

"The standard of review which we employ in cases challenging the sufficiency of evidence to sustain a conviction is well-settled. We do not weigh or resolve conflicts in the evidence, nor do we judge the credibility of witnesses; those matters are for the trier of fact. We look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to determine if there is substantial evidence to warrant a conviction." *E.g., State v. Hatch*, 346 N.W.2d 268, 277 (N.D.1984); *State v. Manke*, 328 N.W.2d 799, 805 (N.D.1982).

The crime of burglary is defined in our code, in relevant part, as follows:

"A person is guilty of burglary if he willfully enters or surreptitiously remains in a building or occupied structure, ... when at the time the premises are not open to the public and the actor is

not licensed, invited, or otherwise privileged to enter or remain as the case may be, with intent to commit a crime therein." § 12.1–22–02(1), N.D.C.C.

Michael Walotsky testified that he and Thompson, beginning at approximately 7:00 p.m. on the evening of June 9, 1983, entered at least three motel rooms of the Seven Seas with the use of some keys that Thompson had apparently found, taking only two dollars and a package of cigarettes. Walotsky also testified that "some guy" approached them and said, "What are you doing?" Walotsky and Thompson then left the motel, climbed over a fence to the ditch alongside Interstate 94, and there buried the keys.

Thompson argues that the State presented no evidence, other than Walotsky's testimony, to prove that he entered the motel rooms. Section 29–21–14, N.D.C.C., not cited by either party, prohibits conviction upon the testimony of an accomplice unless corroborated by other evidence which tends to connect the defendant with the commission of the offense. In *State v. Lind,* 322 N.W.2d 826, 842 (N.D.1982), we said:

"In cases where Section 29–21–14 has been used we have said that *any amount of corroboration will be sufficient to give the case to the jury to determine the sufficiency of the corroboration.* State v. Thorson, 264 N.W.2d 441, 445 (N.D.1978). The corroborating evidence must connect the defendant with the offense. 'It need not be sufficient, in itself, to warrant a conviction or establish a prima facie case. All that is required is that the evidence corroborates the accomplice as to some material fact or facts, and tends to connect the defendant with the commission of the offense .... Corroboration may be furnished by facts and circumstances which tend to connect the defendant with the commission of the crime.' *Thorson,* 264 N.W.2d at 445, quoting *State v. Anderson,* 172 N.W.2d 597, 600 (N.D.1969)." [Emphasis added.]

The trial court included an instruction to the jury on corroboration which essentially incorporated Section 29–21–14 and the above-quoted language from *Lind.*

▮ We believe there was corroborating evidence before the jury, independent of the testimony of Walotsky, consisting of facts and circumstances which tended to connect Thompson with the offenses charged. Thompson was observed with Walotsky in the vicinity of the motel rooms on the evening the rooms were entered. Evidence that the defendant was in the company of accomplices or present at or near the place of the crime shortly before or after the crime was committed, may be sufficient corroboration that tends to connect the defendant with the commission of the crime. *Thorson, supra,* at 446; *Anderson, supra,* at 601. A package of Winston brand cigarettes bearing a Minnesota stamp was found in Thompson's possession. An identical package of cigarettes was reported missing by a guest of the motel. Furthermore, an emergency master key and a maid's key from the Seven Seas were found buried alongside Interstate 94, near the place where Thompson and Walotsky were taken into custody by police. We cannot say, as a matter of law, that there was no evidence corroborating Walotsky's testimony.

In his argument, Thompson notes that Walotsky testified that the cigarettes taken from the motel room were "Newports" and not "Winstons." Thompson testified that while eating at the Seven Seas, Walotsky left for several minutes and returned with a package of Winston cigarettes. He also points to the fact that the missing keys were located upon information provided by Walotsky and not by him; he had no information regarding the location of the keys. However, the weight and sufficiency of the corroborating evidence is for the jury. *Anderson, supra.* It is only when there is no corroborating evidence of the nature required that this Court may reverse a judgment based upon the verdict of guilty. *Id.*

Under our standard of review in cases challenging the sufficiency of the evidence, we must assume the jury believed the evidence which supports the verdict and disbe-

lieved or disregarded as inconsequential any contrary or conflicting evidence. *Voeller, supra,* at 118. Having reviewed the evidence presented to the jury in a light most favorable to the verdict, we conclude that there was substantial evidence reasonably tending to prove Thompson's guilt and warranting his conviction.

### III.

Thompson contends the trial court abused its discretion in denying his motion for a new trial. The alleged newly discovered evidence in this case is an affidavit of Thomas Fredericks, who considers himself a good friend of Thompson's, stating that he heard Michael Walotsky make statements that Thompson was not involved and did not participate in the burglaries. At a hearing on the motion, Fredericks testified that he overheard a conversation between Walotsky and others, sometime during summer vacation after June 9, 1983, in which Walotsky said that Thompson "did not have nothing to do with the Seven Seas crimes." Fredericks testified that he volunteered this information to Thompson, a week or two after overhearing the conversation, after Thompson called him.[1] The trial court, in taking the view "most favorable to the defense" that Fredericks' testimony constituted newly discovered evidence, concluded that the evidence was not sufficient to justify a new trial.

We have serious doubts that this evidence was "newly discovered." Nevertheless, because the trial court ruled on the merits of Thompson's claim, we also will consider the issue on its merits for the purposes of this case.

In our recent decision in *State v. Hegland,* 355 N.W.2d 803, 805 (N.D.1984), we set forth the requirements for a new trial on the ground of newly discovered evidence and also discussed our standard of review in such cases:

"A new trial may be granted under Rule 33, N.D.R.Crim.P., 'if required in the interests of justice.' We noted in *State v. McLain,* [312 N.W.2d 343 (N.D. 1981)], that a motion for a new trial on the ground of newly discovered evidence will be granted only when all of the following requirements are met: (1) the evidence must have been discovered since the trial, (2) the failure to learn of the evidence at the time of trial was not the result of defendant's lack of diligence, (3) the newly discovered evidence is material to the issues at trial, and (4) the evidence is of such a nature that it would probably produce an acquittal in the event of retrial.

"On a motion for a new trial, newly discovered evidence must be considered in light of the entire record made at the trial and at the hearing on the motion. *State v. McLain, supra.* A motion for a new trial on the ground of newly discovered evidence is addressed to the trial court's judicial discretion. The trial court's decision on such motion will not be set aside unless we find that denial of the motion was an abuse of discretion. *State v. McLain, supra; State v. Smith,* 153 N.W.2d 691 (N.D.1967); *State v. Jager,* 91 N.W.2d 337 (N.D.1958); *State v. Zimmerman,* 60 N.D. 256, 233 N.W. 845 (1930)."

The abuse of discretion standard is appropriate in these cases because the trial

---

1. Thompson's trial attorney also filed an affidavit with the trial court. It reads in pertinent part as follows:

"[I]mmediately prior to trial the Defendant advised me that he had a telephone conversation with a person by the name of Thomas Fredericks.... I had asked Mr. Thompson what Mr. Fredericks' statements would be and Mr. Thompson advised me that Mr. Fredericks was going to testify that he had overheard Mr. Walotsky make some statements regarding the burglary at the Seven Seas. Mr. Thompson advised me that this Mr. Fredericks was a high school student. I advised Mr.

Thompson that because this matter was being brought up for the first time immediately prior to trial that I had not had a chance to meet this Mr. Fredericks and to interview him and to find out the contents of his testimony, that I did not feel it would be advisable to have him testify. Furthermore, at that time Mr. Thompson did not advise me where I could even find Mr. Fredericks.... I had made numerous visits with Mr. Thompson from September, 1983, to the day before trial and at no time did Mr. Thompson ever name Mr. Fredericks as a possible witness for the defense."

judge, who has observed the appearance and demeanor of the witnesses and is familiar with the trial and its various incidents, is in a better position to decide these questions than is this Court. *State v. Cray*, 31 N.D. 67, 153 N.W. 425, 429 (1915).

The trial court found that Fredericks' statements would tend only to impeach Walotsky as a witness and would have been, in light of the evidence presented, of minimal benefit to the jury. As a general rule, purely impeaching affidavits do not furnish a good ground for the granting of a new trial. *McLain, supra; State v. Olson*, 285 N.W.2d 575, 577 (N.D.1979); *State v. Young*, 55 N.D. 194, 212 N.W. 857, 863 (1927); *State v. Albertson*, 20 N.D. 512, 128 N.W. 1122, 1124 (1910).

Upon examining Fredericks' affidavit in light of the entire record, we believe that the evidence is not of such a nature that it would probably produce an acquittal in the event of retrial. We cannot conclude that the trial court abused its discretion in denying Thompson's motion for a new trial.

Accordingly, the judgment of conviction and order denying a new trial are affirmed.

VANDE WALLE, PEDERSON and GIERKE, JJ., concur.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this Court at the time this case was submitted.