STATE of North Dakota, Plaintiff and Appellee,

v.

Scot A. HAUGEN, Defendant and Appellant. (Two Cases)

Cr. Nos. 890021, 890022.

Supreme Court of North Dakota.

Dec. 20, 1989.

Lundberg, Nodland, Schulz, Lervick & Tharaldson, Bismarck, for defendant and appellant; argued by Irvin B. Nodland.

Wayne D. Goter, Asst. State's Atty., Mandan, for plaintiff and appellee.

LEVINE, Justice.

Scot Haugen appeals from a judgment of conviction of five counts [1] of accomplice to burglary, a Class C felony. He argues that there was insufficient corroboration of accomplice testimony. We affirm in part and reverse in part.

Five burglaries were committed in Morton County during the summer and fall of 1987. On August 17, 1987, My Place Bar in Flasher, North Dakota, was burglarized. Coin-operated machines were broken into and an undetermined amount of money taken along with some cartons of Marlboro cigarettes. On August 26, 1987, three businesses were burglarized: the Lantern Bar in Almont, Farmers Supply in Almont, and the Empire Bar in Glen Ullin. At the two bars, coins were removed from coin-operated machines and Marlboro and Marlboro Lights cigarettes taken. Farmers Supply, located in the same building as the Lantern Bar, reported the theft of several battery cables. Finally, on November 11, 1987, police apprehended one Donald Haff as he was fleeing from the Silver Dollar Bar in Mandan, shortly after a burglar alarm sounded.

At trial, Haff testified against Haugen, implicating Haugen as his driver and lookout in the five burglaries. In addition to Haff, the State presented as witnesses the owners of the burglarized businesses, five police officers and Lanette Stuhlmiller, an acquaintance of both Haff and Haugen.

The issue on appeal is whether there was sufficient corroboration of Haff's testimony to warrant submitting the case to the jury.

Section 29-21-14, NDCC, provides:

"A conviction cannot be had upon the testimony of an accomplice unless he is corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof."

It is the trial court's duty to first determine, as a matter of law, whether there is any evidence corroborating the testimony of the accomplice. *State v. Haugen*, 448 N.W.2d 191 (N.D.1989). Any amount of corroboration is sufficient to give the case to the jury to determine the sufficiency of the corroboration. *State v. Thorson*, 264 N.W.2d 441, 445 (N.D.1978). It is only when there is no corroborating evidence that this Court may reverse a judgment based upon the verdict of guilty. *State v. Thompson*, 359 N.W.2d 374, 379 (N.D.1985).

All that is required is that the evidence, circumstantial or otherwise, corroborates the testimony of the accomplice

---

1. Haugen was charged with seven counts of accomplice to burglary in two informations. The cases were consolidated for trial and two of the counts were dismissed on the State's motion when the State was unable to produce corroborative witnesses in support of those counts.

as to some material fact or facts, and tends to connect the defendant with the commission of the crime. *Haugen,* 448 N.W.2d at 194; *State v. Neurohr,* 376 N.W.2d 805, 806 (N.D.1985); *State v. Lind,* 322 N.W.2d 826, 842 (N.D.1982); *Thorson, supra,* 264 N.W.2d at 445; *State v. Smith,* 238 N.W.2d 662, 670 (N.D.1976). It is not necessary that the corroborating evidence be sufficient, in itself, to warrant a conviction or establish a prima facie case. *Thompson, supra,* 359 N.W.2d at 379. It is the combined and cumulative weight of the evidence, other than the testimony of the accomplice witness, which satisfies the statute. *Haugen, supra,* 448 N.W.2d at 194; *State v. Anderson,* 172 N.W.2d 597, 601 (N.D.1969). The State need not point to a single, isolated fact which is sufficient corroboration. *Id.*

With regard to the My Place Bar burglary, Haff testified that Haugen drove him to the bar in a black Turismo, owned by Haugen's mother, between 3:00 and 5:00 a.m. on August 17, 1987. Haff testified that while he broke into the bar, Haugen drove around, looking out for the police and then picked up Haff after the burglary was completed. According to Haff, the pair then returned to Mandan and went to a trailer occupied by Sharon Weber and Lanette Stuhlmiller. There, Haff and Haugen rolled coins taken in the burglary.

■ The State introduced independent evidence which corroborated Haff's testimony and tended to connect Haugen with the commission of the My Place burglary. Paul Leingang, a Mandan police officer, testified that he stopped a black Turismo, driven by Haugen with Haff as a passenger, in Mandan, a few hours before the My Place Bar was burglarized in Flasher. Ron Polensky, who operates the My Place Bar, testified that his business was burglarized on August 17 and that a variety of coins were taken from several coin-operated machines. Lanette Stuhlmiller testified that Haff and Haugen came to her trailer about 6:00 or 7:00 a.m. on August 16 or 17 and that while there Haff and Haugen wrapped up or counted a lot of coins.

Thus, independent evidence puts Haugen in the company of Haff both before and after the burglary and ties him to the possession, only hours later, of many coins, the kind of booty taken in the burglary. While it is true that the scene of the crime in Flasher and the sighting by Officer Leingang in Mandan were some sixty miles apart, the circumstances of Haff and Haugen's being together late the night before the early-morning burglary combined with their presence together a few hours after the burglary create an inference that they were together during the intervening hours. Viewing the evidence as a whole, we conclude that it corroborates Haff's testimony and tends to connect Haugen to the My Place burglary.

With regard to the three burglaries on August 26, Haff testified that he and Haugen made a trip to western Morton County in Haugen's mother's car and that between 3:00 and 4:00 a.m., Haugen dropped off Haff at the front door of the Empire Lounge in Glen Ullin. Haugen left to drive around town while Haff broke into pinball machines and a juke box, netting between forty and fifty dollars in coins. On their way back to Mandan, Haff and Haugen decided to stop in Almont. There, Haff broke into the Lantern Lounge where he took money from a jar beside the cash register, some cigarettes and coins from a juke box. On the way out, Haff decided to break into Farmers Supply, which was housed in the same building, because he and Haugen were building a dune buggy and needed battery cables and sparkplugs. He testified that he grabbed four of the longest cables from the wall and that later, he and Haugen installed one of the cables in Haugen's green and white Ram Charger.

Gene Peterson, of Farmers Supply, testified that several red, plastic-coated battery cables of various lengths from twelve inches to four or five feet were missing from his store. The particular brand of cable had a large hole close to the edge of the eye which caused the connectors to break off easily. He testified that police brought him a battery cable to examine which he found to be "exactly like the ones I had that had been stolen." Jerry

McClure, a Morton County deputy sheriff, testified that pursuant to a search warrant, he removed a red battery cable from Haugen's truck which, according to McClure, Peterson later identified as "similar to the ones we sell."

■ The battery cable taken from Haugen's car was admitted into evidence over Haugen's objection that the cable offered was irrelevant because it did not match the description in the search warrant. The search warrant, based on information provided by Peterson's wife, indicated that the stolen items were red battery cables approximately 20 inches in length. The cable admitted into evidence measured 44 inches. We do not believe this inconsistency renders inadmissible the 44–inch battery cable in light of other evidence indicating that the admitted cable was similar to cables taken in the burglary.

The cable admitted into evidence was found in Haugen's vehicle. At 44 inches long, it was of a length within the range of lengths that Peterson identified. More importantly, the cable had the same placement of the eye at the end of the cable which distinguished the stolen cables. Peterson readily identified the cable as exactly like ones stolen from his shop.

■ Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." NDREv 401. The cable had the tendency to make more probable the fact of Haugen's involvement in the burglary of Farmers Supply. Consequently, it was relevant evidence of that fact.

■ By the same token, Peterson's identification of the cable as one of the items stolen from the store, combined with the fact that it was found in Haugen's truck, corroborated Haff's testimony that he and Haugen installed in Haugen's truck one of the cables stolen from Farmers Supply. This independent evidence tends to connect Haugen with the commission of the Farmers Supply burglary. *See State v. Bronson*, 259 N.W.2d 465, 466 (Minn.1977) [evidence of defendant's possession of 20–40 feet of cable sufficiently corroborated accomplice's testimony that defendant took 250–300 feet of the same type of cable].

■ The State argues that the burglaries at Farmers Supply and the Lantern Lounge are sufficiently contemporaneous to give rise to the inference that if Haugen was connected to one, he was connected to the other. We agree.

The Lantern Lounge is located in the same building as Farmers Supply and was burglarized the same night. Similar pry marks were found on the doors at both establishments. This evidence suggests a connection between the two break-ins. It follows that evidence which tends to corroborate Haugen's participation in the Farmers Supply burglary as driver and lookout also tends to corroborate his participation in the burglary at the adjacent Lantern Lounge. Given the proximity of the two businesses, along with the similarity of the pry marks from the forced entry at each business, we believe Haugen's possession of a battery cable, stolen from the nearby Farmers Supply tends to connect him with the break-in at the Lantern Lounge. Thus, the combined evidence tends to connect Haugen as an accomplice to the Lantern Lounge burglary. *See State v. Haugen, supra*, 448 N.W.2d at 195.

Although we have concluded that there is corroborative evidence tending to connect Haugen to the two adjacent burglaries, we do not believe that evidence can be stretched so far or so thin as to tie Haugen to the more distant burglary at the Empire Lounge in Glen Ullin.

The State argues that all three break-ins of August 26 were essentially simultaneous, related burglaries. The fact that they were committed the same night may connect the crimes to each other but it does not connect all of them to Haugen.

The State also sought to connect Haugen with the burglary at the Empire Lounge by introducing evidence of similar pry marks found there. While this evidence does tend to establish a similar mode of forced entry

in the three burglarized premises, it does not tend to connect Haugen to each burglary. Unlike the Lantern Lounge, the Empire Lounge is not adjacent to Farmers Supply; rather, it is in Glen Ullin, some 20 miles away. There was no independent testimony placing Haugen in the vicinity of the Empire Lounge before, during, or after the burglary or otherwise connecting Haugen with the burglary in Glen Ullin. The stolen battery cable which tends to connect Haugen to the two burglaries at adjacent businesses in Almont stretches only so far.

 Consequently, the pry-mark evidence from the Empire Lounge must stand alone. Alone, it is evidence which shows only the fact that the Empire Lounge was broken into and the manner in which that was accomplished. The only other evidence related to this burglary was the testimony of the proprietor of the lounge that her business was burglarized and that coins and cigarettes were taken. This, too, is an example of no corroboration since it shows only the commission of the offense and the circumstances thereof but does not connect Haugen with the crime. *See* NDCC § 29–21–14; *State v. Helmenstein,* 163 N.W.2d 85, 91 (N.D.1968).

In *Helmenstein,* we reversed a burglary conviction because the sole nonaccomplice witness testified only that his store was burglarized and that some merchandise was taken. *Helmenstein, supra,* 163 N.W.2d at 87, 91. The independent evidence there failed to connect the defendant with the crime. The same is true here as to the count involving the Empire Lounge. Without some independent evidence tending to connect Haugen with the Empire Lounge burglary, it was error to have submitted that count to the jury. Accordingly, we reverse Haugen's conviction as to that count.

As to the final burglary, Haff testified that Haugen, driving his green and white Ram Charger truck, dropped him off at the Silver Dollar Bar about 5:00 or 5:30 a.m. on November 11, 1987. While Haff entered the bar, Haugen was supposed to "drive around and watch for cops." Haff was apprehended by the police about a half a block from the bar when an alarm went off. Haugen was not found at the scene.

 The State introduced the following evidence to corroborate Haff: Mandan Police Officers Michael Trygg and Gary Moos, who were on patrol together the morning of the Silver Dollar burglary, both testified that they were familiar with the green and white Ram Charger Haugen customarily drove. Trygg testified that he saw a green and white Charger truck in the vicinity of the Silver Dollar fifteen minutes before the alarm went off. The truck, with two occupants in it, was travelling in the same block as the bar. Moos testified that he saw the vehicle at the same time. Trygg testified that he saw the truck again, five minutes before the alarm and, that this time, it carried only the driver. He was unable to identify either the driver or the passenger but both he and Moos were sure it was Haugen's truck. No license check was conducted. Detective Dennis Bullinger, of the Mandan Police Department, testified that he knew both Haff and Haugen, knew that they associated with one another during the period in which the burglaries took place, and that when the pair was together, Haugen was always driving.

The State argues that the trial court could infer from the sighting of the green and white truck that Haugen was driving it and that he was therefore present near the Silver Dollar right before the break-in. The State argues further that the court could infer from Officer Bullinger's anecdotal testimony that Haugen's known associate, Haff, was his passenger. According to the State, these inferences would place Haugen in the company of the accomplice right before the break-in and thus tend to connect Haugen to the crime. We reject the State's argument.

There is a distinction to be drawn between an inference of fact and mere speculation. An inference is a process of reasoning by which a permissible fact is logically and reasonably drawn by the factfinder from facts already proved or admitted. *See State v. Rasmussen,* 365 N.W.2d 481, 485 (N.D.1985) (Levine, J., specially concur-

ring). Conversely, speculation is mere theorizing about a matter upon insufficient evidence. *See id.* We do not believe that the fact of the presence of an ordinary, unidentified, green and white Ram Charger supports the inferences the State urges as to ownership of the vehicle, identity of the driver, or identity of the passenger.

We have previously stated that evidence that defendant was in the company of accomplices or was present at or near the place of the crime shortly before or after the crime was committed may be corroboration that tends to connect defendant with commission of the crime. *State v. Garcia,* 425 N.W.2d 918, 920 (N.D.1988); *Thompson, supra* 359 N.W.2d at 379; *Anderson, supra,* 172 N.W.2d at 601. We do not have such evidence in this case. All we have is speculation as to Haugen's presence. Speculation is not evidence tending to connect defendant with the commission of the crime.

Furthermore, in none of our previous corroboration cases did the evidence that was alleged to be corroborative consist only of the defendant's presence at or near the place of the crime before the crime was committed. In *Garcia,* the defendant admitted to being with accomplices near the scene of the crime immediately before *and* after the murder. *Garcia, supra,* 425 N.W.2d at 921. Furthermore, a nonaccomplice witness testified that the defendant was with the accomplices when they visited him after the murder. *Id.* In *Thompson,* a witness observed defendant with the accomplice in the vicinity of burglarized motel rooms the evening the rooms were broken into and the defendant was arrested, with the accomplice, later that night. *Thompson, supra,* 359 N.W.2d at 375. In *Anderson,* the defendant was arrested in the company of the accomplice near the scene of the attempted burglary after a police officer, who was familiar with the defendant's gait, recognized defendant running from the scene. *Anderson supra,* 172 N.W.2d at 600–601.

Here, however, Haugen was not apprehended with the accomplice Haff, nor was he seen with Haff before the break-in at the Silver Dollar or identified as the driver of the truck the police officers saw in the vicinity of the bar right before the alarm went off. Thus, there is no corroborative evidence placing Haugen near the Silver Dollar before or after the crime or in the company of Haff before the break-in. Because there was no independent evidence tending to connect Haugen to the break-in at the Silver Dollar, it was error for the trial judge to have submitted that count to the jury. Consequently, we reverse Haugen's conviction of accomplice to burglary at the Silver Dollar.

In conclusion, we affirm Haugen's convictions as to the Farmers Supply, Lantern Lounge and My Place burglaries. We reverse the convictions of accomplice to burglary of the Empire Lounge and Silver Dollar Bar because there was no independent evidence to corroborate the accomplice's testimony as to those counts.

Haugen was sentenced to five years on each of the five counts. Sentences on four of those counts, including the count involving the Empire Lounge, were to run concurrently with one another but consecutively to the sentence on the Silver Dollar conviction. In light of our reversal of two of the five counts, we remand to the trial court for an opportunity to reconsider its sentence on the three remaining counts should it deem that appropriate.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.