STATE of North Dakota, Plaintiff and Appellee,

v.

Jesse GARCIA, Defendant and Appellant.

Cr. No. 880012.

Supreme Court of North Dakota.

July 19, 1988.

Thomas H. Falck, Jr., Asst. State's Atty., Grand Forks, for plaintiff and appellee.

Thomas John Kuchera, of Kuchera, Stenehjem & Wills, Grand Forks, for defendant and appellant.

VANDE WALLE, Justice.

Jesse Garcia appealed from a judgment of conviction entered upon a jury verdict finding him guilty of the crime of murder, a Class AA felony, in violation of Section 12.1–16–01(1), N.D.C.C. We affirm.

This case arose from the death of Thomas Leek. Thomas Leek died at approximately 3:15 a.m. on July 30, 1983, after suffering 19 cut-and-stab wounds, primarily to the upper portions of his body, and after being hit in the head and neck area. Leek's body was found in the rear of a commercial building in Grand Forks, North Dakota.

A trial was held beginning on December 1, 1987. At trial the State, although it called a number of witnesses, relied primarily on the testimony of Francisco Reyes III. Reyes testified that he, the defendant, and a third man named Martine Longoria–DeAnda, came to the East Grand Forks, Minnesota/Grand Forks, North Dakota, area from Crookston, Minnesota, on July 29, 1983. He testified that the three men had begun drinking on the afternoon of July 29 and continued to drink until the early morning hours of July 30, when the car they were in had a flat tire. They then abandoned the car and proceeded on foot until they met four young women, at least some of whom knew the three men. The men requested information about a place to stay and the women directed the three men to the Dacotah Hotel in Grand Forks. At the hotel, first the defendant and then Reyes asked for a room, while Longoria waited outside, but they were told there was no vacancy.

After leaving the hotel, Reyes testified, they spoke with a man driving a dark-colored El Camino, although he could not recall what was said. Reyes stated that he and Longoria then followed Garcia because he was better acquainted with Grand Forks, while Reyes and Longoria were unfamiliar with the city. As they walked along they noticed a man near the back of a garage, who was later identified as Leek. They asked Leek for directions to a motel, but he stated that he did not know of any. When Longoria, who does not speak English (all three men are of Hispanic descent), asked the defendant and Reyes what was going on, a conversation in Spanish ensued. At this point, Reyes testified, Leek stated that they should not speak Spanish because this is America, and that he then grabbed Reyes by the shirt. The two grappled, and Reyes slipped out of his shirt and fell to the ground. When Reyes looked up he saw the defendant hitting Leek and heard Leek yell for him to stop. He did not realize the defendant was using a pocket knife until he saw Longoria try to grab the defendant's arm, at which time Longoria received a cut across the inside of his hand. Reyes testified that he then tried to stop the defendant and received severe cuts to his hands, but that he was able to take the knife away from the defendant.

All three men then ran away from the scene. As they ran Reyes stopped to hide the knife under a wooden curb; however, no weapon was ever found. Reyes testi-

fied that they ran to the home of Jose Chirino, an acquaintance of the defendant. When they arrived there, Reyes stated, he had a large amount of blood on himself and there was also some blood on Longoria. Chirino then drove the three men back to Crookston.

Reyes also testified that he had previously pleaded guilty to a charge of murder, as an accomplice in the death of Thomas Leek; that he was sentenced to 20 years in the State Penitentiary with 10 years of the sentence suspended in return for his agreement to testify about the involvement of the defendant and Longoria in the murder.

The State also introduced testimony from three persons who had seen three Hispanic men within a few blocks of the murder scene at approximately 3 a.m. The first of these witnesses testified that as he was entering his automobile, an El Camino, which was outside the Dacotah Hotel, three Hispanic men asked him if he knew of a motel. After giving them directions the witness drove away. He stated he last saw them near the Federal Building, approximately one block west of the Dacotah Hotel. The second witness testified that he saw three Hispanic males at approximately 3 a.m. near Central High School, which is approximately one block west of the Federal Building. The third witness testified that while he was riding in a car traveling on North Fifth Street he observed three Hispanic males moving diagonally across that street from Central High School in a northerly direction. That point is approximately one block south of the murder scene.

The defendant also testified at trial. The defendant's testimony was quite similar to Reyes's testimony up to the attempt to get a room at the Dacotah Hotel. The defendant testified that after he was told there was no vacancy at the hotel Reyes and Longoria went into the hotel. When they came out they crossed the street and proceeded on while he was tying his shoe. He testified that he spoke with a man outside the hotel for five or six minutes. He then

proceeded in the direction that Reyes and Longoria had taken, but he failed to find them and walked around for 10 to 15 minutes looking for Reyes and Longoria. He testified that Reyes and Longoria came upon him about half a block away from the hotel, at which time they were cut up and bloody. He testified that all three men then began to run toward Chirino's house.

At trial, police officers who arrived at the murder scene at approximately 3:40 a.m. testified that they followed a trail of blood from the murder scene leading in a northeasterly direction for several blocks until rain wiped out the trail. At no point did the trail of blood lead back to the area of the Dacotah Hotel.

■ The defendant argues that the conviction must be reversed because, he contends, there was no evidence to corroborate the testimony of Reyes, an accomplice to the crime. Section 29–21–14, N.D.C.C., provides:

"A conviction cannot be had upon the testimony of an accomplice unless he is corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof."

Under this statute "any amount of corroboration will be sufficient to give the case to the jury to determine the sufficiency of the corroboration." *State v. Lind,* 322 N.W.2d 826, 842 (N.D.1982).

In discussing the requirement of corroboration under Section 29–21–14 we have previously stated:

"Evidence that the defendant was in the company of accomplices or present at or near the place of the crime shortly before or after the crime was committed, may be sufficient corroboration that tends to connect the defendant with the commission of the crime." *State v. Thompson,* 359 N.W.2d 374, 379 (N.D.1985).

See also *State v. Thorson,* 264 N.W.2d 441 (N.D.1978); *State v. Anderson,* 172 N.W. 2d 597 (N.D.1969) [stating at page 601 that

"The fact that the defendant was arrested in the company of accomplices at about 3 a.m. near the scene of the attempted burglary, is an independent fact tending to connect the defendant to the crime"]; and 23 C.J.S. § 812(4)(f). In this case the defendant admits that he was in the company of Reyes and Longoria, near the scene of the murder, immediately before the crime occurred. This was buttressed by the testimony of two of the women who directed the three men to the Dacotah Hotel, and by the night clerk at that hotel. The defendant also admits to being in the company of Reyes and Longoria immediately after the crime occurred. This is supported by the testimony of Jose Chirino that the three men came to his home at approximately 3:30 in the morning and that Longoria and Reyes had blood on themselves at that time. Evidence that the defendant was in the company of Reyes and Longoria near the scene of the crime immediately before and immediately after the murder occurred, at 3:15 in the morning, is sufficient corroboration tending to connect the defendant with the commission of the crime.

Our conclusion that there was sufficient corroborating evidence to send the case to the jury is further bolstered by the following evidence adduced at trial: (1) that three individuals saw three Hispanic males at various places in the downtown area of Grand Forks at approximately 3 a.m., the description of whose movements indicated a progression toward the scene of the murder; (2) that the defendant admitted that he initially denied being in Grand Forks at the time of the murder; (3) that while testifying Jose Chirino stated that in response to his question about the blood on Reyes and Longoria he believed it was the defendant who stated that they had killed a cow; (4) that although the defendant testified to meeting Reyes and Longoria about one-half block from the hotel after being separated, various police officers testified to having followed a trail of blood from the murder scene, leading in a northeasterly direction, a direction leading away from the Dacotah Hotel and not toward it. As we have previously stated:

"The state is not called upon to point to some single or isolated fact which, in itself, unrelated to other proven facts, will be sufficient corroboration. It is the combined and cumulative weight of the evidence, furnished by non-accomplice witnesses, which supplies the test. *State v. Pusch* [77 N.D. 860, 46 N.W.2d 508 (N.D.1950)]." *State v. Anderson, supra*, 172 N.W.2d at 601.

We conclude that there was sufficient corroborating evidence to send the case to the jury.

The defendant also contends that there was insufficient evidence to support the jury's verdict. When we review the sufficiency of the evidence to convict,

"we do not weigh conflicting evidence, nor do we judge the credibility of witnesses; instead, we look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to see if there is substantial evidence to warrant a conviction." *State v. Manke*, 328 N.W.2d 799, 805 (N.D.1982).

After reviewing the evidence in a light most favorable to the verdict we conclude that there was sufficient evidence to convict.

The judgment is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.