STATE of North Dakota, Plaintiff
and Appellee,

v.

Robert W. HOGIE, Jr., Defendant
and Appellant.

Cr. Nos. 890089, 890090.

Supreme Court of North Dakota.

April 12, 1990.

**502**

Wendy P. Schulz (argued), States Atty., Jamestown, for plaintiff and appellee.

Gilje, Greenwood & Dalsted, Jamestown, for defendant and appellant; argued by John E. Greenwood.

MESCHKE, Justice.

We consider consolidated appeals by Robert W. Hogie, Jr., from a jury conviction for theft of property and from a following order which revoked his probation on a prior conviction. We hold that Hogie's possession of the recently stolen automobile sufficiently corroborated testimony of two accomplices for the theft conviction. We affirm both the conviction and the revocation.

Hogie was criminally charged with theft of an automobile, a class C felony under NDCC 12.1–23–02(1) and 12.1–23–05(2)(d). During his jury trial, the State used the testimony of two accomplices who had been separately convicted of the same theft. The accomplices, Mark Buckeye and Jerald Rudolph, gave similar testimony which we summarize here.

Buckeye and Rudolph were drinking with Hogie during the evening of April 10, 1987. Earlier in the week, Hogie had obtained a set of keys to a yellow Camaro parked on the lot of Walt Sanders Chevrolet by break-ing into a "lock box" attached to the Camaro's window. In the early morning hours of April 11, the trio decided to steal this auto from Sanders.

After taking the Camaro, Hogie drove the threesome to the home of Buckeye's parents in Edgeley, North Dakota, where they picked up cassette tapes, got money from Buckeye's brother, and filled the car with gas at a filling station. On the same day, they left Edgeley to drive to Kansas where Buckeye planned to "settle a debt," meaning that he expected to assault an individual. By alternating drivers during the journey, all three men drove the Camaro. They stopped briefly in Frederick, South Dakota, removed a set of South Dakota license plates from another auto, and placed them on the Camaro. After staying overnight at Grand Island, Nebraska, they traveled together to Osbourne County, Kansas, where Buckeye "settled his debt."

Afterward, Hogie, Buckeye, and Rudolph stopped to eat lunch at a fast-food restaurant in Smith Center, Smith County, Kansas. Hogie entered the restaurant to order, leaving Buckeye and Rudolph in the Camaro. While Hogie was waiting for the food, a Smith County sheriff's car pulled into the parking lot directly behind the Camaro. Shortly, Sheriff Floyd Bose arrested Buckeye for assault based on a teletype advisory to be on the lookout for a yellow Camaro carrying someone named Buckeye and several other passengers.

After arresting Buckeye, Sheriff Bose had Hogie and Rudolph follow him in the Camaro to his office. There, Sheriff Bose asked about ownership of the Camaro. None of the three claimed the vehicle. Sheriff Bose asked Hogie whether he had driven the Camaro. Hogie responded that all three men had driven it and that he had driven the vehicle to the restaurant. Sheriff Bose then asked Hogie to sign a consent-to-search form, which Hogie signed. When Sheriff Bose checked the vehicle identification number with the National Information Crime Network, he learned that both the vehicle and the plates were stolen. Later, Hogie was arrested and charged with theft.

After this testimony by the two accomplices, the State called Sheriff Bose as a corroborating witness. Sheriff Bose testified that Hogie admitted driving the Camaro to the restaurant in Smith Center, that Hogie drove the car to the Sheriff's office, that he asked Hogie to sign a consent-to-search form, and that Hogie voluntarily signed the form. The signed consent to search was put in evidence.

After the State rested its case, Hogie moved for acquittal alleging that the State's corroborating evidence was legally insufficient to submit the case to the jury. The trial court denied Hogie's motion. The jury returned a guilty verdict. Hogie appealed the conviction.

After Hogie's conviction, the State moved to revoke Hogie's probation on a prior suspended sentence for burglary. At the revocation hearing, the State submitted a certified copy of the conviction for theft, certified copies of two other convictions in municipal court, and testimony that Hogie had not yet paid $417 in court-ordered restitution. The trial court revoked Hogie's probation and imposed a sentence concurrent with Hogie's sentence for theft. Hogie also appealed the revocation.

On appeal, Hogie claimed "that without the testimony of the two accomplices, Rudolph and Buckeye, there [was] not sufficient other evidence which 'tends to connect the defendant with the commission of the offense,' theft of an automobile." Hogie contended that the trial court erred in submitting the theft case to the jury because there was "a total lack of any other evidence that [Hogie] was involved in the theft." Hogie argued further that the probation revocation must be reversed if the conviction for theft is set aside.

Since Sheriff Bose "provided evidence of his observations and Hogie's own oral and written statements concerning his connection with the [stolen] vehicle," the State argued that there was enough evidence to allow the jury to weigh the corroboration. The State contended that Hogie's possession of the stolen car, as evidenced by his driving it, by his admissions about driving it, and by his consenting to the search of it, connected him to its recent theft.

Under North Dakota law, a defendant cannot be convicted of a crime upon the testimony of accomplices alone. NDCC 29-21-14 declares:

A conviction cannot be had upon the testimony of an accomplice unless he is corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof.

The purpose of corroborative evidence is to demonstrate that an accomplice is a reliable witness and worthy of credit. *State v. Haugen*, 448 N.W.2d 191 (N.D.1989) [*Haugen I*]; *State v. Smith*, 238 N.W.2d 662 (N.D.1976); *State v. Kent*, 4 N.D. 577, 62 N.W. 631, 638 (1895). Evidence other than an accomplice's testimony must tend to connect the defendant to the crime.

When an accomplice testifies, the trial court must first determine, as a matter of law, whether other evidence corroborates that testimony. When the trial court has determined that other evidence corroborates the accomplice's testimony, the sufficiency of all of the evidence is for the jury to decide. *State v. Haugen*, 449 N.W.2d 784 (N.D.1989) [*Haugen II*]; *Haugen I; State v. Garcia*, 425 N.W.2d 918 (N.D.1988). While the existence of corroborating evidence is for the trial court, the credibility and weight of that evidence is for the jury. *State v. Foster*, 69 N.D. 428, 287 N.W. 517, 520 (1939). To be submitted to the jury, the corroborating evidence standing alone does not need to prove guilt.

As used in the statute requiring corroboration, "tends" indicates tendency, not certainty. Websters Third New International Dictionary 2354 (1971) says the ordinary meaning of "tend," in this context, is "to have an inclination toward a particular belief, feeling, or attitude." Thus, every fact given by an accomplice need not be corroborated. All that is needed is other evidence corroborating one or more material details or facts which tend to connect the defendant with the crime.

*Haugen I; State v. Neurohr,* 376 N.W.2d 805 (N.D.1985); *State v. Lind,* 322 N.W.2d 826 (N.D.1982). The prosecution need not point to a single, isolated item which in itself is corroborative. Rather, the combined and cumulative evidence other than the testimony of an accomplice may tend to connect the defendant to the crime. *Haugen II; State v. Anderson,* 172 N.W.2d 597 (N.D.1969). Circumstantial as well as direct evidence can be corroborative.

It is not necessary that the corroborating evidence "be sufficient, in itself, to warrant a conviction or establish a prima facie case." *Anderson,* 172 N.W.2d at 600. *See also State v. Thompson,* 359 N.W.2d 374 (N.D.1985); *Lind; State v. Thorson,* 264 N.W.2d 441 (N.D.1978). If some evidence tends to connect a defendant to the crime, it is for the jury to weigh that corroborating evidence with the accomplices' testimony to determine the guilt or innocence of the defendant.

■ We agree that Hogie's possession of the stolen vehicle in Kansas with plates stolen in South Dakota tended to connect him to the recent theft in North Dakota. It is well established and widely recognized that a jury may infer a defendant's guilt of theft from his unexplained possession of recently stolen property. The United States Supreme Court described this permissible inference as "a traditional common-law inference deeply rooted in our law" and quoted James Thayer, writing in his Preliminary Treatise on Evidence (1898), who explained that the inference was "the descendant of a presumption 'running through a dozen centuries.'" *Barnes v. United States,* 412 U.S. 837, 843–844, 93 S.Ct. 2357, 2362, 37 L.Ed.2d 380 (1973). *See* 50 Am.Jur.2d *Larceny* § 160 (1970); Annotation, *Modern Status: Instruction Allowing Presumption or Inference of Guilt From Possession of Recently Stolen Property as Violation of Defendant's Privilege Against Self-Incrimination,* 88 A.L.R.3d 1178 (1978); Annotation, *What Constitutes "Recently" Stolen Property Within Rule Inferring Guilt From Unexplained Possession of Such Property,* 89 A.L.R.3d 1202 (1979); Annotation, *Pre-sumptions and Inferences Arising in Prosecutions Under National Motor Vehicle Theft Act (Dyer Act) (18 USCS §§ 2312, 2313) From Unexplained Possession of Stolen Motor Vehicle,* 15 A.L.R. Fed. 856 (1973). Unexplained possession of recently stolen property permits an incriminating implication.

Examples are plentiful. In *Brown v. State,* 165 Ga.App. 51, 299 S.E.2d 108 (1983), the defendant was convicted of theft of a motor vehicle after he was found in possession of it in another county 90 miles distant, six days after the vehicle was reported stolen. In *State v. Clayton,* 658 P.2d 621 (Utah 1983), the defendant was convicted of theft after he was located in California in possession of a vehicle stolen in Utah six days earlier. And, in *People v. Sherman,* 110 Ill.App.3d 854, 65 Ill.Dec. 581, 441 N.E.2d 896 (1982), the defendant was convicted of theft when he was arrested driving a vehicle stolen about two weeks earlier. These examples illustrate that Hogie's possession was a circumstance which tended to connect him with the theft.

■ The presence of the accomplices in the stolen vehicle does not dispel the inference of complicity. The kind of possession which supports an inference of guilt may be joint. 50 Am.Jur.2d *Larceny* § 161 (1970); § 4 ("View That Possession May Be Joint") and § 24 ("Theft of Motor Vehicle," "Driven By Defendant"), Annotation, *What Amounts To "Exclusive" Possession of Stolen Goods to Support Inference of Burglary or Other Felonious Taking,* 51 A.L.R.3d 727 (1973). For example, *see People v. Donald,* 132 Ill.App.2d 598, 270 N.E.2d 85 (1971) which held the evidence was sufficient to convict of theft where defendant was found driving an automobile five days after its theft, despite lack of direct evidence that defendant had taken the auto. The Illinois Court said: "Neither is it of consequence that there was a second occupant of the car who may have been exercising joint control over the auto. Where possession is joint, it is presumed all in possession are guilty of theft." (citations omitted). 270 N.E.2d at 86. Indeed, the otherwise unexplained presence

of the two testifying accomplices as passengers with Hogie in the recently stolen vehicle when they were stopped can be viewed as an additional corroborating circumstance.

This court has frequently held that a defendant's unexplained possession of recently stolen property is incriminating. In *State v. Rosencrans*, 9 N.D. 163, 82 N.W. 422 (1900), this court held that a defendant's possession of two rakes and a hay mower nine days after their theft was sufficient evidence of guilt of grand larceny. "It is a well-settled principle that the recent personal possession of stolen property, not satisfactorily explained, is an evidential fact, from which complicity in the larceny of the property may be inferred." 83 N.W. at 423. In *State v. Lennick*, 47 N.D. 393, 182 N.W. 458 (1921), this court held that defendant's possession in Dunn County of three cows stolen from Mercer County 13 days earlier was sufficient evidence of larceny. "The jury also were warranted in finding that the defendant had the possession of stolen property, recently, after it was stolen. This gave rise to the presumption of fact that the recent possession of stolen property, not satisfactorily explained, is an evidentiary fact from which the crime of larceny may be imputed." 182 N.W. at 459. In *State v. Williams*, 150 N.W.2d 844 (N.D.1967), this court approved an instruction to the jury to this effect for the crime of larceny of an automobile, when given with instructions placing the burden of proof upon the State to show all of the elements of larceny beyond a reasonable doubt. The instruction approved was:

> To warrant an inference of guilt from the possession of stolen property, the possession must be personal, recent, unexplained, and must involve a conscious exercise of dominion over the property.

*Id.* at 847. *See also City of Dickinson v. Gresz*, 450 N.W.2d 216 (N.D.1989). Unexplained possession of recently stolen property is an incriminating circumstance.

This court has often recognized that incriminating possession of stolen property corroborated testimony of an accomplice.

In *State v. Smith*, 51 N.D. 130, 199 N.W. 187 (1924), this court held that a larceny defendant's possession of an automobile stolen four days earlier in another city over 75 miles away corroborated testimony of his accomplice sufficiently to affirm the conviction. In *State v. Smith*, 238 N.W.2d 662 (N.D.1976), we ruled that evidence, that at his arrest defendant possessed a diamond engagement ring taken in the burglary, was a circumstance which sufficiently corroborated an accomplice's testimony. In *Haugen I*, we ruled that rolled and loose quarters, like those stolen in a burglary and found on the floorboard in front of the driver's seat of a vehicle driven to a bank by defendant on the day following the burglary, tended to connect the defendant with the burglary. We concluded that this possession helped support testimony of the witness who accompanied defendant in the car and who testified against him. In *Haugen II*, a stolen battery cable on defendant's car was deemed corroborative of an accomplice's testimony that the defendant aided in a burglary. Similarly, Hogie's unexplained possession of the recently stolen Camaro corroborated testimony of his accomplices.

■ Accordingly, we conclude that the trial court properly submitted all of the evidence to the jury, including the testimony of the accomplices, the corroborating testimony of the sheriff, and the consent-to-search form signed by Hogie. There was sufficient evidence to support the jury's verdict of guilty. We affirm Hogie's conviction for theft.

■ Hogie's sentence on revocation of probation was concurrent with his sentence for theft, which we have affirmed. The theft conviction alone was sufficient to justify the revocation. Therefore, it is unnecessary for us to consider Hogie's other arguments about the sufficiency of the evidence for revocation of probation.

We affirm.

ERICKSTAD, C.J., and GIERKE, J., concur.

VANDE WALLE, Justice, dissenting.

I respectfully dissent.

Recent decisions of this Court, some of which I have authored, may appear to minimize the purpose of the requirement in NDCC § 29-21-14 that the testimony of an accomplice be corroborated in order to convict. But, simply put, because accomplices are often given reduced sentences or other incentives to testify, the law looks with distrust on their testimony and will not allow a defendant to be convicted on that testimony unless it is corroborated. *State v. Kent*, 4 N.D. 577, 62 N.W. 631 (1895). The requirement is therefore more than a procedural device or a hoop through which the State must jump in order to obtain a conviction when the entire evidence against the defendant consists of the testimony of the accomplices. We have stated numerous times that all that is required is that the evidence corroborate the testimony of accomplices as to some material fact or facts and tends to connect the defendant with the commission of the offense; that it is not necessary that the corroborating evidence be sufficient, in itself, to warrant a conviction or establish a prima facie case; and that it is not necessary that the State corroborate every fact testified to by an accomplice. *E.g., State v. Haugen*, 448 N.W.2d 191 (N.D.1989); *State v. Lind*, 322 N.W.2d 826 (N.D.1982). But there is a point at which the evidence that "tends to connect the defendant with the commission of the offense" becomes so tenuous that, even though it may be some evidence, it cannot, as a matter of law, rise to a level adequate to submit the issue of whether or not it is sufficient corroborative evidence to the jury. For the reasons stated below, I believe this is such a case.

The majority opinion cites numerous authorities for the proposition that possession of stolen property is sufficient to convict of theft and therefore most certainly must be sufficient corroborative evidence. Those authorities include annotations on subjects such as instructions allowing presumption or inference of guilt from possession of recently stolen property as a violation of a defendant's privilege against self-incrimination and what constitutes recently stolen property for purpose of inferring guilt from unexplained possession of stolen motor vehicle which, as acknowledged in the majority opinion, involve issues other than that of corroborative evidence. In many instances in the authorities cited the defendant was in sole possession of the stolen property. Where that is the fact of the case, that fact alone may be sufficient corroborative evidence. I might reach that conclusion even in those instances in which the defendant is found in possession of the property with persons other than the accomplice-witnesses. Where, however, the defendant's "possession" is shared with that of the alleged confessed or convicted accomplices it is too facile a rationale, for the defendant's presence with the accomplices makes the defendant an easy victim upon which to place all or some of the blame for the crime.

I do not understand that the majority opinion relies upon guilt by association, *i.e.,* that the fact the defendant is found in the company of the accomplices some days after the crime was committed and hundreds of miles away from the place of the crime is sufficient corroborative evidence. If that understanding is correct, then the defendant's "possession" of the automobile as shared with those accomplices adds nothing of substance to the picture. For example, given the same time and distance as here, if the stolen property was a ring found in the pocket of an accomplice, would that constitute sufficient evidence of corroboration of the accomplice's testimony that defendant had acted with that accomplice to steal the ring?[1] I assume not, because the defendant would not be in "possession" of the ring. Although the majority opinion concludes that all the persons in the automobile are "in possession" of the automobile, that conclusion is more a fiction of law than factual evidence of possession. "Many cases have recognized that

---

1. *Compare State v. Smith*, 238 N.W.2d 662 (N.D. 1976), in which this Court concluded that a stolen diamond ring, found in the pocket of the defendant, was sufficient corroborative evidence to submit the case to the jury.

it may be found that an inference of guilt of burglary based on defendant's possession of stolen goods has not been raised where the stolen property was found in a place where others had an equal right and facility of access thereto." Annotation, *What Amounts To "Exclusive" Possession of Stolen Goods to Support Inference of Burglary or Other Felonious Taking,* 51 A.L.R.3d § 5 727, 737 (1973).

More specifically, in dealing with a motor vehicle, there are many ways in which a person can come into possession of the vehicle, some of which involve innocence on the part of the possessor of the vehicle:

"The possession of an automobile which does not belong to the driver is not so strange, unusual, or unique that it points to guilty knowledge as more likely than innocent knowledge on the part of the driver. The borrowing or leasing of an automobile for temporary use is not an uncommon occurrence. If every person possessing an automobile which they did not own would be held accountable as having knowledge that the automobile was stolen, every person who borrowed a car would be in peril of a conviction for receiving stolen property." *Commonwealth v. Henderson,* 451 Pa. 452, 457, 304 A.2d 154, 157 (1973).

That rationale is even more compelling where, as here, "possession" of the automobile is shared with accomplices who are the source of the only evidence that the defendant committed the theft of the automobile. Furthermore, as an annotation at 15 A.L.R.Fed. 856, 859 (1973) discusses, the inference of guilt flowing from possession of a recently stolen motor vehicle grows weaker as the time of the possession recedes from the time of theft. Thus, if the defendant had been found in the vehicle with the accomplices within a few hours of the theft and not days later and hundreds of miles away from the place of the crime, I might agree that there was sufficient inference to permit the matter to go to the jury.

In *State v. Haugen,* 449 N.W.2d 784 (N.D.1989), we recently observed that an inference is a fact logically drawn from the admitted evidence and that speculation is a mere theorization of facts from the evidence. We reversed two burglary convictions because the accomplice testimony was not sufficiently corroborated. We noted that that "corroborative evidence" presented by the State did not support the inferences it sought to make, but only amounted to mere speculation that the defendant was connected with the crime. In one instance we reversed the conviction because there was no independent testimony placing the defendant in the vicinity of the place of the crime before, during, or after the burglary or otherwise connecting the defendant with the burglary. Here, although the majority opinion does not so indicate, there was no independent evidence that Hogie was even a resident of North Dakota much less that he was in the vicinity of the place of the crime before, during, or after the burglary.

We reversed another burglary conviction, observing that:

"We have previously stated that evidence that defendant was in the company of accomplices or was present at or near the place of the crime shortly before or after the crime was committed may be corroboration that tends to connect defendant with commission of the crime. [Citations omitted.] We do not have such evidence in this case. All we have is speculation as to Haugen's presence. Speculation is not evidence tending to connect defendant with the commission of the crime." *Haugen, supra,* 449 N.W.2d at 789.

In conclusion, I do not believe that the State entered sufficient corroborative evidence to allow the court to submit the case to the jury. If § 29-21-14, NDCC, is to protect a defendant, more than coincidence and speculation are required. The State's corroborative evidence was too remote in time and place to "tend to connect" Hogie to the theft in Jamestown. If the testimony of the accomplices is to be believed, it appears that the State had more persuasive corroborative evidence available to it which it did not offer into evidence. For example, the State could have entered into evidence the testimony of Dave Buckeye, Mark Buckeye's brother, or the full-service gas

**508**

station attendant. The testimony of these individuals could have placed Hogie in the automobile, and in the company of the accomplices, near the place of the theft immediately after it occurred. *See State v. Garcia,* 425 N.W.2d 918 (N.D.1988) [evidence that defendant was seen in the company of the accomplices near the scene of the crime before and after it occurred was sufficient corroborative evidence tending to connect defendant to the crime]; *State v. Thorson,* 264 N.W.2d 441 (N.D.1978) [testimony that defendant and accomplices were together near the scene of the crime was sufficient corroborative evidence].

Because I do not believe there was sufficient corroborative evidence tending to connect Hogie to the crime to submit the case to the jury, I would reverse Hogie's judgment of conviction for theft.

The second case in this consolidated appeal stems from the district court's order revoking Hogie's earlier probation. It is clear from the order that the court considered Hogie's judgment of conviction for theft, two minor-in-possession convictions and testimony that Hogie had not paid court-ordered restitution which, at the time of the revocation hearing, was not yet due. However, the order did not specify which of the aforementioned grounds the court utilized in revoking Hogie's probation. Because I am unable to determine from the order whether the court based its decision to revoke the probation solely on the judgment of conviction for theft, solely on the minor-in-possession conviction, or on a combination of all the listed grounds, I would remand the order revoking probation to the district court for reconsideration and instruct the court to consider the grounds for revocation in light of the reversal of Hogie's judgment of conviction for theft.

LEVINE, J., concurs.