STATE of North Dakota, Plaintiff and Appellee,

v.

Oscar Rodriquez TORRES, Defendant and Appellant.

Cr. No. 940214.

Supreme Court of North Dakota.

March 16, 1995.

Rosalie V. Martinelli, 3rd year law student, appearing under the rules on limited practice of law by law students, argued. Thomas H. Falck, Jr. (appeared), Asst. State's Atty., Grand Forks, for plaintiff and appellee.

Jon P. Burgess, 3rd year law student, appearing under the rules on limited practice of law by law students, argued. Arline F. Schubert (appeared), Grand Forks, for defendant and appellant.

MESCHKE, Justice.

Oscar Rodriquez Torres appeals from a criminal conviction for delivery of marijuana. We hold that an accomplice's testimony was satisfactorily corroborated. We affirm.

One day in September 1993, Myles Nelson, an undercover narcotics agent in Grand Forks, received an offer from Noe Ramos to sell him marijuana. Ramos was unaware that Nelson was undercover. Nelson and Ramos met later in the City Center Mall parking lot. Nelson told Ramos that he wanted to buy at least seven pounds of the drug, and Ramos replied that he would have to contact his source for that quantity. During this conversation, Ramos used Nelson's cellular phone to dial the home number of Torres, but got no answer. Ramos told Nelson that he had to make more calls, and would get back to him.

That evening, Ramos again contacted Nelson and arranged to meet him in the Kmart parking lot at South Forks Plaza to complete the sale. Ramos, his wife, and infant son showed up there, and Nelson paid Ramos $3,000. Ramos said that he had to go to Burger King to meet his source to get the drug.

Instead, Ramos drove around to Sears in the South Forks Plaza, picked up Torres and Torres's son, and promptly returned. Ramos left his car and got into Nelson's car with a bag containing nearly seven pounds of marijuana. Officers promptly surrounded them, seized the drug bag, and arrested Ramos and Torres on the spot.

Ramos pled guilty to delivery of marijuana, and received a seven-year sentence, with six years suspended, in exchange for his testimony against Torres. Torres was charged with delivery of marijuana and went to trial. At Torres's trial, Ramos testified that Torres was his source, he had tried to call Torres on Nelson's cellular phone, and Torres supplied the drugs Ramos sold for an added profit.

Torres testified that he and his son had been shopping at South Forks Plaza when he came upon Ramos using a pay phone, and Ramos offered them a ride home since Torres's wife was late picking them up. When Ramos picked them up, Torres testified, Ramos removed a bag from the trunk of his car and drove to the Kmart lot. There, police officers seized Torres in Ramos's car and arrested him. Torres insisted he knew nothing about the drug deal and did not deliver any marijuana. Melinda Cevas, Torres's common law wife, Brenda Guerrero, Torres's daughter, and Hector Guerrero, Torres's son, all testified in an attempt to support Torres's story.

The trial court found Torres guilty of delivery of marijuana, and sentenced him to five years in prison. Torres appeals.

Torres argues the evidence was unreliable and insufficient to convict him, and his trial counsel performed deficiently, violating his Sixth Amendment right to effective counsel. Specifically, Torres claims that his presence

at the scene alone did not corroborate Ramos's testimony, an accomplice's unilateral and unanswered phone call to his home could not incriminate him, and Torres's attorney did not sufficiently investigate for trial nor adequately examine witnesses at trial. We disagree.

■ Our review of the sufficiency of the evidence for a criminal conviction is limited, and we do not reweigh the evidence nor judge the credibility of witnesses. *State v. Austin,* 520 N.W.2d 564, 570 (N.D.1994). We will not reverse a criminal conviction unless, after viewing all reasonable inferences favorable to the prosecution, no rational fact finder could have found the defendant guilty beyond a reasonable doubt. *Id.* As *State v. Syring,* 524 N.W.2d 97, 98 (N.D.1994), explained, the "defendant must show that the evidence, when viewed in a light most favorable to the verdict, establishes no reasonable inference of guilt."

■ Corroboration of an accomplice is required by NDCC 29-21-14:

*Testimony of accomplice—Corroboration required.* A conviction cannot be had upon the testimony of an accomplice unless he is corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof.

Corroboration is needed to demonstrate the reliability of the accomplice as a witness. *State v. Hogie,* 454 N.W.2d 501, 503 (N.D. 1990). The corroborating evidence must tend to connect the defendant to the crime. *Id.*

Still, "[a]ll that is needed is other evidence corroborating one or more material details or facts which tend to connect the defendant with the crime." *Id.* (citations omitted). "It is not necessary that the corroborating evidence 'be sufficient, in itself, to warrant a conviction or establish a prima facie case,'" and "it is for the jury to weigh that corroborating evidence with the accomplices' testimony to determine the guilt or innocence of the defendant." *Id.* at 504 (citations omitted). *State v. Burgard,* 458 N.W.2d 274, 277

(N.D.1990) (emphasis in original, citations omitted), explained: "The corroborating evidence need not 'establish criminal conduct,' but need only corroborate the accomplice as to some material fact and *tend to connect* the defendant with the crime. Furthermore, the corroborating evidence need not, in isolation, be incriminating, if the combined and cumulative evidence other than the accomplice's testimony tends to connect the defendant with the commission of the offense."

■ Here, Torres's presence at the scene by itself may or may not have been enough for a conviction. *Compare City of Wahpeton v. Wilkie,* 477 N.W.2d 215, 217 (N.D.1991) ("... this court require[s] more than mere presence to convict" for constructive possession in some cases), with *State v. Morris,* 331 N.W.2d 48, 54 (N.D.1983) (constructive possession can be inferred from circumstances like "an accused's presence in the place where a controlled substance is found."). At oral argument, Torres cited *Moreno v. State,* 761 S.W.2d 407 (Tex.Ct.App.1988) and *People v. Dingle,* 70 Misc.2d 840, 335 N.Y.S.2d 233 (N.Y.Sup.Ct.1972) directing acquittals for insufficient corroboration from mere presence at the scene of a drug deal. Distant precedent is little help because we have held presence at or near the scene of a crime, together with other circumstances, is sufficient to corroborate an accomplice's testimony and to convict. *State v. Garcia,* 425 N.W.2d 918, 920 (N.D.1988). There is more than mere presence or an isolated circumstance here. The act of the accomplice's attempted phone call to Torres's residence adds corroboration in this case. The aggregation of circumstances, reinforced with testimony by the narcotics officers, clearly corroborated Ramos's testimony and linked Torres to the drug delivery.

Agent Nelson testified that, at his initial meeting with Ramos that day, Ramos "stated that he'd have to go make a call to see if he could produce the extra amount [of marijuana] that I requested. I had my cellular phone with me at that time and I gave it to Mr. Ramos to use, at which time he called a telephone number. There was no answer and he stated that he called Crookston, Minnesota." After Nelson returned to his

office, other officers "retrieved the number on the phone that was last called and that would have been the call that Mr. Ramos made." Another officer testified the retrieved number matched Torres's home telephone in Crookston.

Agent Nelson testified he gave Ramos $3,000 in the Kmart parking lot, and Ramos left to get the marijuana. Ramos soon returned with the drug and with Torres in his car. Even though Nelson hadn't seen Torres before, the chain of circumstances leading up to Torres's presence at the place of the drug delivery supports a reasonable inference that Torres was Ramos's supplier. *State v. Burgard,* 458 N.W.2d at 278 n. 3 (accomplice's attempt to phone a named source, his statement "he would get the marijuana" from that named source, and his confirmation "he had in fact obtained it" from that source were corroborative when the statements came before the accomplice "realizes that he is dealing with law enforcement agents"); *State v. Lind,* 322 N.W.2d 826, 842–433 (N.D.1982) (statements made before realization of dealing with drug-enforcement agents independently corroborates testimony). Because Ramos did not then know Nelson was an undercover agent, the connecting circumstances here corroborated that Ramos obtained the marijuana from Torres.

Viewing the evidence as a whole and not in fragments, we conclude the aggregate evidence corroborated Ramos's testimony and tended to connect Torres with the crime of delivery of a controlled substance, just as we did in *Burgard* at 278. Viewing all inferences in the light most favorable to the verdict, we also conclude that the evidence reasonably established that Torres was guilty. Accordingly, we affirm Torres's conviction.

Torres claims ineffective assistance of counsel brought about his conviction. Specifically, Torres claims his attorney did not make a sufficient investigation before trial and did not adequately cross-examine witnesses at trial, thereby violating his right to effective assistance of counsel guaranteed under the Sixth Amendment of the United States Constitution.

■ We decline to consider this question because this is not the appropriate place or time to evaluate the assistance of counsel. *See State v. Ricehill,* 415 N.W.2d 481 (N.D. 1987); *State v. Denney,* 417 N.W.2d 181 (N.D.1987). As we wrote in *Ricehill* at 484, "the record before us is devoid of any indication of" any lack of investigation by Torres's attorney, and "this court requires more than a mere representation of what the testimony would be; we require some form of proof...." We described in *Denney,* at 182–83, "the futility of considering claims about counsel's behavior that have not been examined by the trial court. Without a record scrutinizing the reasons underlying counsel's conduct, adjudging it subpar is virtually impossible." (citations omitted). *Denney* at 183, citing *Ricehill,* also explained: "If we cannot readily determine that assistance of trial counsel was plainly defective, and no other grounds for reversal exist, the defendant can later pursue his claim at a postconviction proceeding where an adequate record can be developed." Those reasons apply here, too.

There is no evidence here about the extent of investigation conducted by Torres's trial attorney, and it is not readily apparent from this record that reasonable cross-examination was missing. For a plausible claim about ineffective assistance of counsel, Torres would have to develop evidence in a postconviction proceeding under NDCC Chapter 29–32.1. *See State v. Wilson,* 466 N.W.2d 101, 105 (N.D.1991) ("Only evidentiary exploration of facts not recorded in the transcript of this trial can determine the reasonableness of this defense attorney's performance."). On this incomplete record, we cannot conclude that Torres's trial attorney conducted a deficient defense.

We affirm Torres's conviction.

VANDE WALLE, C.J., and NEUMANN and SANDSTROM, JJ., concur.

LEVINE, J., concurs in the result.