2006 ND 135

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Gloria GRESZ, Defendant and Appellant.**

**No. 20050401.**

Supreme Court of North Dakota.

June 29, 2006.

James A. Hope (argued), Assistant State's Attorney, Dickinson, ND, for plaintiff and appellee.

Camille O'Kara Hann (argued), Dickinson, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Gloria Gresz appealed from a criminal judgment entered upon a jury verdict convicting her of disorderly conduct. We affirm.

I

[¶ 2] Ed and Leona Praus operate an auction service in western North Dakota. Ed and Leona Praus claimed to have difficulties in the past with Gresz causing a ruckus at their auctions. Gresz believes various members of the Praus family have broken into her house and car to steal her property on numerous occasions. At trial, Gresz claimed the Prauses sold her stolen property at auction which required Gresz to buy her property back.

[¶ 3] The current charge of disorderly conduct arose from an incident between Gresz and Ed Praus at a Dickinson Trinity Mardi Gras fundraiser held on January 30, 2005. Varying testimony was given about what happened. An observer of the incident testified Gresz said to Ed Praus in a loud voice in front of 80–100 people: "You fucking son of a bitch, get the hell out of here, God damn you." He testified she continued to shout obscenities. Leona Praus did not directly observe the incident but testified that Gresz said to her: "And you stay out of my house." She also testified Gresz had been disruptive at auctions for a year and a half telling potential customers their auction items were stolen property. Ed Praus testified that Gresz yelled at him in a loud voice in front of 25–30 people that he was a " 'son-of-a-bitch, and damn pig.' And she says, 'Quit stealing stuff from my house and out of my car.' "

[¶ 4] Gresz testified she became upset when she noticed some items at the auc-

tion. She claimed the items were stolen from her house. When she saw the Praus family, she became nervous because, as she described it:

[T]hese people are horrendous criminals. They've been using a lock pick on my mobile home in Belfield as well as my home on Highway 10. They've been using a lock pick on my vehicles, too. They've hauled my property into their auctions. I've had to buy my property back four to five times and still they come back and pick it up and take it to another auction. I found my property at a Beach auction more than once at the Beach Community auction and also auctions down at New Leipzig, even as far as New Leipzig. Delvin Praus is very handy with the lock pick. I want him out of my home. I don't want him near me. That is the truth.

She testified she firmly asked Ed Praus to stay away from her and to stay out of her house. She claimed a few people witnessed the event. Gresz testified she made her statements because she was afraid.

I noticed Ed Praus was coming around the corner quite rapidly like he was right on my he[e]ls and that is the point I got really, really upset and really nervous and really frightened. So, I turned around and I told him to leave me alone and just stay away from me. I informed him again because I had been out to their auctions and I noticed my stolen property showing up at their auction—

Gresz claimed she did not use obscenities during the incident. She testified that she merely said:

"You stay away from me" because I have feared this man. I know that he carries a gun. I know that Delvin and Kelly Praus they are violent people. They showed up at the [ ] place which

was across the street from my mobile home in Belfield and those people were into crime, they were into drugs, they were into prostitution. I have fear of them.

[¶ 5] During closing arguments to the jury, Gresz's attorney argued that Gresz made her statements because she thought she was defending herself from people who wrongfully entered her property. On appeal, Gresz claims the district court committed obvious error by not including a jury instruction on self-defense. At no time during the proceedings did Gresz object to the instructions given to the jury.

## II

[¶ 6] If there is evidence to support a self-defense claim, the accused is entitled to an instruction on it. *State v. Olander*, 1998 ND 50, ¶ 20, 575 N.W.2d 658. We review the sufficiency of the evidence for support of a jury instruction in the light most favorable to the defendant. *State v. Schumaier*, 1999 ND 239, ¶ 9, 603 N.W.2d 882.

[¶ 7] Jury instructions must correctly and adequately inform the jury of the applicable law. *State v. Erickstad*, 2000 ND 202, ¶ 16, 620 N.W.2d 136. The procedure for requesting and objecting to jury instructions is set forth in N.D.R.Crim.P. 30. To preserve an appellate challenge to a jury instruction, a party must specifically object to a court's proposed instruction. *Olander*, 1998 ND 50, ¶ 10, 575 N.W.2d 658. The failure to adequately preserve an issue for review limits this Court's inquiry to whether the court's failure to instruct the jury was obvious error affecting substantial rights. *Id.* at ¶ 11. Under N.D.R.Crim.P. 52(b)[1], "[a]n

obvious error or defect that affects substantial rights may be considered even though it was not brought to the court's attention." The power to notice obvious error is done cautiously and only in exceptional circumstances where a serious injustice has been done to the defendant. *State v. Moran*, 2006 ND 62, ¶ 26, 711 N.W.2d 915. We may notice an obvious error if there was (1) error, (2) that is plain, and (3) affects substantial rights. *Id.* (citing *State v. Clark*, 2004 ND 85, ¶ 6, 678 N.W.2d 765).

[¶ 8] From our review of the evidentiary record, we cannot say the district court committed obvious error by failing to include a jury instruction for self-defense. Self-defense is defined in N.D.C.C. § 12.1–05–03: "A person is justified in using force upon another person to defend himself against danger of imminent unlawful bodily injury, sexual assault, or detention."

[¶ 9] This case turns on what "force" means for purposes of self-defense. We need not look any further than the definition section of the criminal code which defines force as "physical action." N.D.C.C. § 12.1–01–04(11). At oral argument, Gresz argued force for self-defense purposes can be brought about by words alone. In the self-defense context, physical action upon another person is a requirement of force. Even words that are shouted would not meet the common understanding of the statutory definition of "force."

[¶ 10] Gresz did not allege physical action was used by either party. Viewing the evidence in the light most favorable to Gresz, there was testimony that Gresz became nervous and frighten because Ed

---

1. This rule was stylistically amended effective March 1, 2006. Because the changes to the rule were stylistic and the application of the new rule does not work an injustice to the parties, the amended version of the rule applies on appeal. *State v. Genre*, 2006 ND 77, ¶ 36 n. 1, 712 N.W.2d 624.

Praus was right on her heels. There was also testimony that Gresz asked Ed Praus to leave her alone and to stay away from her. But absent from all testimony given at trial is evidence that physical action was used upon another person. Without a showing of physical action upon another person, we cannot say the failure to instruct the jury on self-defense was error, let alone obvious error. We affirm.

[¶ 11] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.

SANDSTROM, Justice, concurring in the result.

[¶ 12] I concur in the result only, because the majority unnecessarily repeats crude obscenities and republishes defamation by unnecessarily including the names of those victimized by defamatory statements. *See Lovcik v. Ellingson,* 1997 ND 201, ¶ 18, 569 N.W.2d 697 (Sandstrom, J., concurring in the result).

[¶ 13] Dale V. Sandstrom