2007 ND 89

**STATE of North Dakota, Plaintiff and Appellee**

v.

**William FALCONER, Defendant and Appellant.**

**No. 20060210.**

Supreme Court of North Dakota.

June 7, 2007.

Tyrone Jay Turner, Assistant State's Attorney, Bismarck, N.D., for plaintiff and appellee.

Kent M. Morrow, Bismarck, N.D., for defendant and appellant.

CROTHERS, Justice.

[¶ 1]   William Falconer appeals from a criminal judgment entered after a jury found him guilty of possession of methamphetamine with intent to manufacture, possession of drug paraphernalia for use with methamphetamine, possession of methamphetamine, and aggravated assault. We affirm in part, reverse in part, and remand.

I

[¶ 2]   On April 20, 2005, Bismarck Police Officer Darrin Heinert was dispatched to a convenience store where he found Bridget Niska, who appeared to be the victim of an assault. Niska was being treated by medical personnel, and Officer Heinert observed she was covered in blood, had a bruised and swollen eye, and was visibly upset. Niska told Officer Heinert Falconer assaulted her in her apartment.

[¶ 3]   Once Niska was transported to the hospital, Officer Heinert and a second police officer went to Niska's apartment. The officers entered and performed an initial sweep of the apartment. No one was in the apartment, but the officers found evidence of the assault and items appearing to be illegal drug paraphernalia and other contraband. The officers be-

lieved they had found the crime scene and notified a supervisor, who requested detectives be dispatched to the location.

[¶ 4] Detective Cody Trom responded, after briefly interviewing Niska at the hospital. Detective Trom obtained Niska's consent to search the apartment, but he was advised that Falconer also lived in the apartment and may be the only tenant listed on the lease. Based on this information, the officers sought and obtained a search warrant after they were unable to locate Falconer to get his consent to search the apartment.

[¶ 5] While Detective Trom was obtaining the search warrant, Detectives Roger Marks and Jason Stuglemeyer continued interviewing Niska at the hospital. The detectives observed Niska had heavy bruising on her eyes, a cut on her left eyelid, red marks and scratches on her throat, and scratches on her arms and legs. Niska told the detectives she had been using methamphetamine with Falconer during the early morning hours of April 20, 2005. She said she went into the bathroom and locked the door around 9:00 a.m. and Falconer kicked in the bathroom door surprising her. She stated Falconer was very upset, she was not able to calm him down, and he hit her in the face ten times before leaving the room. Niska told the detectives she went into the living room and Falconer followed her carrying a two and a half foot metal rod from a halogen lamp. She said they started arguing and Falconer removed her glasses because he did not want to break them. She told the detectives she tried to get clothes on to leave, but Falconer began choking her with the metal rod. She said she was able to get away from Falconer, grab the rod, and hit him on the head causing a laceration which bled profusely. Niska told the detectives she was afraid and tried to leave, but Falconer attacked her again, knocked her down, and choked her four or five times almost to the point of unconsciousness. She said she was eventually able to get away and run to a nearby convenience store, but she was afraid he would kill her for reporting the incident to the police. The detectives also questioned her about the drug paraphernalia in her apartment, and she said it belonged to Falconer. Detectives Marks and Stuglemeyer finished the interview and went to Niska's apartment to assist with executing the search warrant.

[¶ 6] While executing the search warrant, officers found a metal rod and blood splattered in the area Niska claimed the assault occurred, and they found the bathroom door's latch was damaged and parts of the door jamb were shattered. The officers also found evidence of methamphetamine manufacturing and the use of controlled substances, including spoons with crusted white residue, empty pseudoephedrine blister multi-packs, unopened pseudoephedrine blister multi-packs, plastic bottles with writing on the outside partially filled with a chemical solution later identified as containing methamphetamine, empty bottles containing a residue and chemical smell, a broken light bulb used as a smoking device for methamphetamine, a baggie of marijuana, a film canister containing a white crystalline substance later identified as methamphetamine, a mirror with a crystalline substance on its surface, funnels, coffee filters, a syringe, dishes with residual substances on them, cigarette rolling papers, and a cotton ball with methamphetamine residue on it. The officers observed the apartment's vents were sealed off with duct tape. Officers also found clothes and shoes appearing to belong to a man of Falconer's size. The evidence from the apartment was sent to the North Dakota State Crime Laboratory for analysis; many of the items tested positive for marijuana, methamphetamine,

or chemicals that are the by-product of the methamphetamine manufacturing process.

[¶ 7]   Niska was released from the hospital on April 20, 2005, after she was diagnosed with a possible rib fracture and her other injuries were treated.   On April 21, 2005, Detectives Trom and Marks conducted a follow-up interview with Niska at her apartment.   Niska was advised of her *Miranda* rights and was informed the detectives were conducting a more thorough investigation of the incident.   Niska agreed to talk to the detectives.   She told the detectives she would sometimes assist Falconer in manufacturing methamphetamine, but she claimed her role was limited to purchasing pseudoephedrine, removing the pills from the blister packages, and bringing Falconer clean water during the cook-off stage of the manufacturing process.   She stated Falconer did most of the manufacturing alone and some parts of the process were completed at another location.   Niska said Falconer completed part of the manufacturing process at their apartment on April 19, 2005, and he put a solution of methamphetamine and other solvents in plastic bottles with writing on them.   She also told the detectives Falconer used duct tape to close off the apartment's vents to contain the chemical smell during the methamphetamine manufacturing process.

[¶ 8]   Based on the information the officers received from Niska and the evidence collected from the apartment, Falconer was arrested and charged with possession of methamphetamine with intent to manufacture, possession of methamphetamine, possession of drug paraphernalia for use with methamphetamine, possession of drug paraphernalia for use with marijuana, and aggravated assault.

[¶ 9]   On January 26, 2006, Niska contacted Detective Marks advising him she wanted to recant her previous statements.

Detective Marks asked Niska if the incident did not happen as she claimed.   She said no and informed the detective she did not want to pursue the prosecution any further.

[¶ 10]   A jury trial was held on March 28 and 29, 2006.   The State subpoenaed Niska to testify, but she invoked her Fifth Amendment privilege against self-incrimination.   She was granted use immunity under N.D.C.C. § 31–01–09 and was required to testify.   Her trial testimony contradicted her previous statements to law enforcement.   Niska testified Falconer was a close friend at the time of the incident and would stay with her occasionally, but she lived in the apartment by herself.   She testified Falconer stayed with her on April 19, 2005, and she used methamphetamine that night, but she could not recall whether Falconer used any.   Niska testified she was in the bathroom on the morning of April 20, 2005, when Falconer pushed the door open.   She said he was mad at her for doing more drugs, and she testified about the assault:

THE STATE:   And at any point did this turn physical?

NISKA:   Yes, it did.

THE STATE:   And is this the point when he struck you?

NISKA:   I struck him.

THE STATE:   Did he strike you in the face approximately 10 times?

NISKA:   After I hit him.

THE STATE:   Where did you hit him?

NISKA:   I hit him in the back of the head with a metal rod.

THE STATE:   It's your testimony that he did not strike you 10 times while you were in the bathroom?

NISKA:   No.

THE STATE:   And where did you get the metal rod?

NISKA: It was part of a halogen lamp, and I had taken the lamp apart, and I had the rod sitting by the door.

THE STATE: That was in the bathroom with you?

NISKA: That happened out in the bedroom area.

THE STATE: Then he struck you 10 times in the face?

NISKA: No. He just kind of just, not really hit me, just kind of pushed me, asking me why.

THE STATE: Where did he just kind of hit you?

NISKA: Right here (indicating).

THE STATE: On the lower part of your face?

NISKA: Mm-hmm.

THE STATE: Did it hurt?

NISKA: No.

THE STATE: Were you crying?

NISKA: No.

She testified she could not recall whether he took her glasses off, but she said Falconer pushed her against the wall and choked her to calm her down after she hit him on the head. Niska said she fell down at some point and he kicked her in the ribs, but she eventually left and ran to a nearby convenience store to end the fight and prevent both of them from further harming each other. She also testified she manufactured methamphetamine by herself and Falconer did not help her. She did not remember talking to any of the detectives on April 20 or 21, 2005, and she testified that she lied in her previous statements to police. She could only recall contacting Detective Marks to recant her previous statements.

[¶ 11] The jury found Falconer guilty on all counts, except possession of drug paraphernalia for use with marijuana. Falconer appeals from the judgment of conviction.

## II

[¶ 12] Prior to trial, Falconer submitted a list of proposed and requested jury instructions, including self-defense. The State objected, arguing Falconer was not entitled to a self-defense jury instruction because he was the initial aggressor and was not justified in using force. The district court agreed Falconer was the initial aggressor and denied his request for the self-defense instruction. Falconer argues the court erred in refusing to give the proposed self-defense jury instruction.

[¶ 13] "Jury instructions must correctly and adequately inform the jury of the applicable law...." *State v. Olander*, 1998 ND 50, ¶ 18, 575 N.W.2d 658. A defendant cannot be found guilty unless the State proves every element of the offense beyond a reasonable doubt, and an element of an offense means " 'the nonexistence of a defense as to which there is evidence in the case sufficient to give rise to a reasonable doubt on the issue.' " *Id.* at ¶¶ 19–20 (quoting N.D.C.C. § 12.1–01–03(1)(e)). A defendant is entitled to a jury instruction on a defense if there is evidence that creates a reasonable doubt about an element of the charged offense. *Id.* at ¶ 20. A defendant is entitled to a self-defense jury instruction if there is evidence to support it, and the State must prove beyond a reasonable doubt the defendant did not act in self-defense. *State v. Gresz*, 2006 ND 135, ¶ 6, 717 N.W.2d 583; *Olander*, at ¶ 20. Whether there is sufficient evidence to support a jury instruction is viewed in the light most favorable to the defendant. *Gresz*, at ¶ 6.

[¶ 14] Self-defense is defined in N.D.C.C. § 12.1–05–03:

A person is justified in using force upon another person to defend himself against

danger of imminent unlawful bodily injury . . . except that:

. . . .

2. A person is not justified in using force if:

. . . .

b. He has entered into a mutual combat with another person or is the initial aggressor unless he is resisting force which is clearly excessive in the circumstances. A person's use of defensive force after he withdraws from an encounter and indicates to the other person that he has done so is justified if the latter nevertheless continues or menaces unlawful action.

[¶ 15] The district court concluded Falconer was not entitled to a self-defense jury instruction because he kicked in the bathroom door and therefore was the initial aggressor. The court's finding that Falconer was the initial aggressor is supported by the evidence. However, an initial aggressor is justified in using force and is entitled to a self-defense jury instruction if he is resisting force which is clearly excessive under the circumstances. N.D.C.C. § 12.1–05–03(2)(b).

[¶ 16] Niska testified Falconer was mad at her and pushed in the bathroom door. But, Niska further testified Falconer left the bathroom and she followed him, grabbed a metal rod, and hit him over the head, causing a laceration that bled profusely. Niska testified Falconer did not hit her until after she hit him on the head and he choked her to calm her down. There was evidence Falconer was the initial aggressor but Niska responded with force that was clearly excessive under the circumstances and Falconer had to use force to resist her. Viewing the evidence in a light most favorable to Falconer, we conclude there was evidence to support a self-defense claim. Whether Niska's testimony is credible and whether Falconer's

conduct in resisting Niska's possible excessive use of force was reasonable are questions for the jury. *Cf. State v. Cox*, 532 N.W.2d 384, 388 (N.D.1995) (reasonableness of defendant's conduct in resisting an unlawful arrest is a question for the jury).

[¶ 17] After carefully reviewing the record, we conclude evidence supported a self-defense claim and Falconer was entitled to a jury instruction on self-defense. The district court erred by failing to instruct the jury on self-defense, and we reverse Falconer's aggravated assault conviction and remand for a new trial.

### III

[¶ 18] Falconer claims the district court erred when it allowed the State to issue a grant of use immunity to Niska under N.D.C.C. § 31–01–09 because the statutory requirements were not met.

[¶ 19] The ability to challenge a grant of immunity is personal, like the ability to assert the privilege against self-incrimination, and therefore a defendant does not have standing to challenge a grant of immunity to another person. *See, e.g., United States v. Neal*, 743 F.2d 1441, 1445 (10th Cir.1984); *United States v. Lewis*, 456 F.2d 404, 409 (3d Cir.1972); *State v. Kingbird*, 412 N.W.2d 350, 354 (Minn.Ct.App.1987). We conclude Falconer does not have standing to challenge whether Niska's immunity was properly granted.

### IV

[¶ 20] Falconer argues his convictions for possession of methamphetamine with intent to manufacture, possession of methamphetamine, and possession of drug paraphernalia for use with methamphetamine should be reversed because there was insufficient independent evidence to corroborate Niska's testimony. The dis-

trict court concluded Niska was an accomplice to the drug offenses and, therefore, N.D.C.C. § 29–21–14 requires her testimony be corroborated by some independent evidence tending to connect Falconer with the drug offenses. Falconer claims the evidence presented at trial was insufficient because there was no evidence that he actually possessed any of the drugs or paraphernalia or that he was even in Niska's apartment.

[¶ 21] A defendant cannot be convicted of a crime solely upon an accomplice's testimony. *State v. Hogie*, 454 N.W.2d 501, 503 (N.D.1990). Section 29–21–14, N.D.C.C., requires an accomplice's testimony be corroborated by independent evidence:

> A conviction cannot be had upon the testimony of an accomplice unless he is corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof.

Corroborative evidence is used to demonstrate an accomplice is a reliable and credible witness. *Hogie*, at 503. We have said,

> every fact given by an accomplice need not be corroborated. All that is needed is other evidence corroborating one or more material details or facts which tend to connect the defendant with the crime. The prosecution need not point to a single, isolated item which in itself is corroborative. Rather, the combined and cumulative evidence other than the testimony of an accomplice may tend to connect the defendant to the crime. Circumstantial as well as direct evidence can be corroborative.

*Id.* at 503–504 (citations omitted).

[¶ 22] The existence of corroborating evidence is a question of law, but whether evidence is sufficient to corroborate the accomplice's testimony is a question for the jury. *Hogie*, 454 N.W.2d at 503. If independent evidence tends to connect a defendant to the crime, it is for the jury to weigh the evidence with the accomplice's testimony and decide the guilt or innocence of the defendant. *Id.* at 504. This court may reverse a judgment based upon a verdict of guilty only when there is no corroborating evidence. *State v. Haugen*, 449 N.W.2d 784, 785 (N.D.1989).

[¶ 23] Here, the district court found there was some corroborating evidence, and submitted the issue of the sufficiency of the evidence to the jury. We reverse only if there is no corroborating evidence, and in this case, we conclude there was corroborating evidence. The police officers found clothing in the apartment, including shoes, that were too big for Niska and appeared to be Falconer's size. Niska testified Falconer stayed at her apartment the night before the assault and he would often bring clothing when he stayed overnight. The officers found a metal rod and fresh blood splattered in the area between the living room and bedroom, where Niska claimed she hit Falconer over the head with the metal rod. Niska's clothing was covered in blood, and she did not have any large lacerations where the blood may have come from. Officers found the damaged bathroom door and the shattered door jamb, which corroborated Niska's initial account of the assault. While much of this evidence is circumstantial, it corroborates Niska's initial statements to law enforcement.

[¶ 24] Falconer claims this evidence is insufficient because there was no evidence that he actually possessed any of the drugs or paraphernalia. But the corroborating evidence does not have to be sufficient, in itself, to warrant a conviction

or establish a prima facie case. *Haugen*, 449 N.W.2d at 786. Moreover, the corroborating evidence does not have to be direct evidence of the defendant's participation in the crime. *State v. Fraser*, 2000 ND 53, ¶ 21, 608 N.W.2d 244. "While evidence of presence alone may not always be enough to convict, 'presence at or near the scene of a crime, together with other circumstances, is sufficient to corroborate an accomplice's testimony and to convict.' " *State v. Esparza*, 1998 ND 13, ¶ 10, 575 N.W.2d 203 (quoting *State v. Torres*, 529 N.W.2d 853, 855 (N.D.1995)).

[¶ 25] Here, the independent evidence corroborates Niska's initial statements to law enforcement and her testimony that Falconer was at her apartment on April 20, 2005. This independent evidence placing Falconer at Niska's apartment is sufficient to tend to connect Falconer to the drug offenses. "A person may be guilty of willful possession of a controlled substance by either being in actual or constructive . . . possession." *State v. Woinarowicz*, 2006 ND 179, ¶ 29, 720 N.W.2d 635. "Constructive possession may be established by showing the defendant had the power and ability to exercise dominion and control over the controlled substance." *In re L.A.G.*, 1999 ND 219, ¶ 12, 602 N.W.2d 516. The accused's presence in the place where the substance is found, the accused's proximity to the place where the substance is found, and whether the substance is in plain view may be considered. *Woinarowicz*, at ¶ 29.

[¶ 26] According to the police officers' testimony, Niska's apartment was small. Officer Darrin Heinert testified that when he first entered Niska's apartment he saw a mirror with what appeared to be methamphetamine on it on the kitchen counter between the stove and sink in plain view. Detective Marks testified he found a wooden bucket containing two spoons with what appeared to be methamphetamine residue in the bathroom next to the toilet. Detective Stugelmeyer testified a spoon and cotton ball with methamphetamine residue were found in plain view in the kitchen. The officers also found glass dishes with a residue next to the kitchen sink, plastic bottles with a chemical residue and emitting a chemical odor in the kitchen, and packs of pseudoephedrine in the living room couch. The officers found methamphetamine, methamphetamine manufacturing equipment, and paraphernalia in plain view.

[¶ 27] While much of the corroborating evidence is circumstantial, the combined and cumulative evidence places Falconer in Niska's apartment and tends to connect him to the drug offenses. Whether the evidence was sufficient is a question for the jury, and we will not reverse so long as there is some corroborating evidence. *Haugen*, 449 N.W.2d at 785. We conclude the requirements of N.D.C.C. § 29–21–14 were met, the court did not err in submitting the case to the jury. We affirm Falconer's drug convictions.

## V

[¶ 28] We affirm Falconer's convictions for possession of methamphetamine, possession of methamphetamine with intent to manufacture, and possession of methamphetamine paraphernalia. We reverse Falconer's aggravated assault conviction and remand for a new trial.

[¶ 29] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.